UNITED STATES of America, Appellee,

v.

Patrick R. FALTICO, Appellant.

No. 77–1887.

United States Court of Appeals,
Eighth Circuit.

Submitted July 14, 1978.

Decided Nov. 15, 1978.

James R. Wyrsch, Kansas City, Mo., for appellant.

Denis E. Hynes, Atty., F. T. C., Washington, D. C., for appellee.

Before GIBSON, Chief Judge, HENLEY, Circuit Judge, and EISELE, Chief District Judge.*

HENLEY, Circuit Judge.

This is an action commenced by the government in the United States District Court for the Western District of Missouri to compel Patrick R. Faltico, a Kansas City attorney and business man, to comply fully with a subpoena duces tecum requiring him

---

* The Honorable G. Thomas Eisele, Chief United States District Judge, Eastern District of Arkansas, sitting by designation.

to appear and give a deposition and to bring with him books and records of a defunct Illinois corporation known as Top Value Meats, Inc.[1] Faltico, hereinafter referred to at times as respondent, appeared for the taking of his deposition, was sworn and gave some testimony. However, with respect to the documents demanded by the government he claimed attorney-client privilege and also raised questions about his control over certain of the documents that he had been called upon to produce.

Thereafter the government filed its motion in the district court to compel discovery, as authorized by Fed.R.Civ.P. 37(a). Respondent resisted the motion. After evidentiary hearings were held, the district court granted the government's motion, and this appeal followed.[2]

The controversy arises from the fact that in 1974 the Federal Trade Commission commenced an investigation of business practices engaged in by a number of corporations which were involved directly or indirectly in what is referred to as the "freezer meat" business. The Commission suspected that the practices to be investigated were prohibited by 15 U.S.C. § 45; the investigation was authorized by 15 U.S.C. § 46. A number of the corporations under investigation operated in the Kansas City metropolitan area; however, the one involved in this particular case, Top Value Meats, Inc., had its principal place of business in Oak Park, Illinois, and operated in the Chicago area. The records in this case and in other cases indicate that respondent Faltico had been closely connected with and perhaps in control of a number of the corporations being investigated by the Commission.[3]

In January, 1974 the Commission determined by resolution to embark on the investigation that has been mentioned and to employ compulsory process to obtain necessary information. The investigation was directed at a number of meat companies and other corporations connected with them, and at Mr. Faltico. One of the targets of the investigation was Top Value Meats, Inc. (Top Value), the Illinois corporation.

Top Value was incorporated in 1972 and its president and probably its ostensible principal shareholder was Harold D. Hill, Sr. The company had a number of retail outlets in the Chicago area; it sold meat to consumers on an installment contract basis, and the contracts were discounted with finance companies in the Chicago area with the proceeds of the sales being deposited in a number of Illinois bank accounts.

By the fall of 1975 the company was in difficulties with Illinois authorities, and it ceased operations in October of that year. Later in the same year it was dissolved by the Illinois Secretary of State on account of its failure to pay its corporate franchise tax and to file its annual report with the Corporation Division of the office of the Secretary of State.

Prior to the collapse of the company the Commission served upon it an order to furnish a special report as provided by 15 U.S.C. § 46(b) giving detailed information as to its organization, ownership, business

1. The subpoena was issued pursuant to Fed.R. Civ.P. 45(d)(1).

2. The controversy between the parties was considered first by Senior District Judge William H. Becker who made preliminary findings of fact and conclusions of law. Later, the case was given further consideration by District Judge Russell G. Clark who adopted the findings and conclusions of Judge Becker and entered the order whence comes this appeal.

3. The Commission's investigation of the freezer meat business and a related investigation by the Department of Justice to determine whether the proceeds of racketeering activities were being invested in that business in violation of

18 U.S.C. § 1962 have produced substantial litigation in the Western District of Missouri and have evoked at least three reported opinions of this court. *Federal Trade commission v. Packers Brand Meats, Inc.*, 562 F.2d 9 (8th Cir. 1977); *In re Faltico*, 561 F.2d 109 (8th Cir. 1977); *Blue Ribbon Quality Meats, Inc. v. Federal Trade Commission*, 560 F.2d 874 (8th Cir. 1976). And the instant case is not unrelated to still another Commission case now before us that involves a Missouri corporation, *Top Value Meats, Inc. v. Federal Trade Commission*, 586 F.2d 1275 (8th Cir. 1978); the two cases were argued the same day and before the same panel of the court.

practices and connections with other business enterprises.

Top Value did not comply with that order, and in due course the Commission entered a notice of default that commanded compliance with the original order not later than June 15, 1975. Top Value did not heed that notice and as of June 15, 1975 it became subject to the civil penalty of $100.00 per day provided by 15 U.S.C. § 50.

In mid-September, 1975 the government filed a suit in the United States District Court for the Northern District of Illinois to compel Top Value to file the special report called for by the Commission and to collect the accrued and accruing per diem penalties. 15 U.S.C. §§ 49 and 50.

As stated, the company ceased to operate in October, 1975 and was involuntarily dissolved later in that year. Not surprisingly Top Value did not defend the government's suit, and the government obtained a default judgment enforcing the Commission's order calling for a special report and awarding the civil penalties sought by the government. Thereafter, the government, proceeding under Fed.R.Civ.P. 69(a), called on Harold Hill to supply the special report that the Commission had demanded of Top Value. Mr. Hill failed to do so, and was adjudged to be in civil contempt of the Illinois federal court.

In an effort to purge himself of that contempt Hill advised that court and government counsel that as far as management and control of Top Value were concerned, he was nothing but a figurehead, and that the company was controlled entirely by Faltico either personally or acting through two Missouri corporations that Faltico allegedly controlled. Those corporations are, or at least were, American Employment Service, Inc. and National Management Systems, Inc., both of Kansas City.

In view of that information the government decided to take the post-judgment deposition of respondent in Kansas City, and the subpoena duces tecum involved in this case was duly served on him. Generally speaking, that subpoena called on respondent to produce for inspection all of the books, records and papers of Top Value that were in his possession or under his control. The production of such records might have been of benefit to the Commission in its investigation of the meat companies, or it might have revealed assets of the dissolved company that could be seized and used to satisfy the monetary judgment that the government had obtained in Illinois. Or the records could have supplied a basis for holding other corporations and individuals, including Faltico, personally liable for the financial obligation of Top Value under the judgment that had been rendered against it.

When respondent appeared for the taking of his deposition, he had with him a "legal file" containing some documents relating to Top Value. He offered to submit the contents of that file to the district court for in camera examination; however, with respect to those contents respondent took the position that they were protected from disclosure by the attorney-client privilege, and he did not reveal them to the Assistant United States Attorney who was taking the deposition. As to other documents respondent demanded that the term "control" be defined and indicated that depending on that definition, other relevant documents might or might not be under his control. An impasse having been reached, the government filed its Rule 37(a) motion in the district court.

The district court issued an order on respondent requiring him to show cause why he should not be compelled to comply with the subpoena as far as the production of Top Value documents was concerned. Respondent filed a response to the government's motion, and the government filed replies to that response. Attached to one of the replies was a long affidavit from Harold Hill which set out in great detail what has been stated in substance here already.

At the evidentiary hearing that was held on June 16, 1977 Judge Becker considered the Hill affidavit, the detailed testimony of Hill, and certain exhibits introduced by the government. The respondent did not testify and called no witnesses. It appears,

however, that he did introduce into evidence an affidavit claiming privilege and that he tendered certain documents to the court for in camera inspection.

At the conclusion of the hearing Judge Becker ruled from the bench that in view of the connection between respondent and Top Value no attorney-client relationship had ever existed between them. Alternatively, the trial judge was of the view that if there had ever been an attorney-client privilege with respect to Top Value documents it had been forfeited by what the judge referred to as "constructive fraud" practiced by Top Value and respondent on the authorities of the State of Illinois.

At a later hearing that was held on July 12, 1977 respondent submitted some additional documents to the district court but offered no additional evidence.

The order of Judge Clark from which respondent appeals was entered on August 15, 1977, and it provided that a satisfactory production of documents be made on the afternoon of August 22 in the office of the United States Attorney at Kansas City. Apparently, the taking of the deposition of respondent was to be resumed at that time or thereafter.

The taking of the deposition was resumed on September 9 and respondent produced additional documents. However, his testimony and additional production evidently did not settle the dispute between the parties, and respondent filed a timely notice of appeal from the order of Judge Clark on September 12, 1977.

 We have given careful consideration to the record in the case, to the briefs of the parties, and to the oral arguments that have been made both in this case and in its related case, 586 F.2d 1275.[4] We conclude that the findings of the district court on the issue of attorney-client privilege have substantial evidentiary support and are not clearly erroneous. This case is readily distinguishable factually from *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596 (8th Cir. 1978). We also conclude

that no error was committed by the district court in ordering respondent to produce Top Value documents and records that were within his effective control even though they may have been placed in the hands of corporations which are not parties to this action.

However, we are not convinced that Mr. Faltico has not actually produced all of the Top Value documents that are relevant to the Federal Trade Commission's investigation, or to the government's judgment for penalties, and that are still in existence and subject to respondent's effective control.

In the circumstances we hold that the judgment of the district court requiring Faltico to produce all Top Value documents covered by the subpoena and in his possession or under his effective control should be affirmed. We think, however, that the case should be remanded to the district court for further consideration of the question of whether or not respondent has already produced all of the documents falling within the category just mentioned. Upon the filing of our mandate in the district court, that court should inquire of counsel for the government whether it desires to pursue this matter further; if the response is in the affirmative, the district court should set a date for a further hearing, and prior to that hearing counsel for the government should be required to state with some specificity what documents of Top Value it contends are in the possession or under the control of respondent and that he has not produced. If the government's response to the district court's inquiry is in the negative or if no response is forthcoming within a time fixed by the district court, the case may simply be closed.

Affirmed and remanded for further proceedings consistent with this opinion.

4. *See* n. 3, *supra*.