Joseph DIAMOND, as Executor of the Estate of Leo A. Diamond, and Individually, and Gail Diamond Schwartz and Diane Diamond Bernstein, Plaintiffs,

v.

Albert John STRATTON, Defendant.

No. 81 CIV 3659 (LBS).

United States District Court, S.D. New York.

Aug. 30, 1982.

---

Paul D. Rheingold, P.C., New York City, for plaintiffs.

Lord, Day & Lord, New York City, Hogan & Hartson, Washington, D.C., for defendant; John W. Castles, III, New York City, Stuart Philip Ross, Washington, D.C., of counsel.

## OPINION

SAND, District Judge.

This case arises out of a dispute over whether the death of Leo A. Diamond (the "insured") is covered by a travel insurance policy, issued by certain underwriters at Lloyd's, London, of which defendant is the lead underwriter. Plaintiffs' first of two causes of action asserts policy coverage, alleging that injuries resulting from a December, 1979 bus accident were the direct and independent cause of the insured's death in May, 1980. Plaintiffs' second cause of action states:

"12. In refusing to pay the said principal sum, defendant and its agents have stated to plaintiffs that the proximate cause of the demise of LEO A. DIAMOND was the conduct of plaintiffs in removing life support systems from LEO A. DIAMOND, and was not the said bus accident.

13. The making by the defendant of the said statement and the willful refusal to pay the amount due has inflicted intentionally and recklessly upon plaintiffs extreme emotional suffering, for which plaintiffs seek damages, individually, of $100,000.

14. The making of the said statement and the willful refusal to pay the amount due is so outrageous and dishonest, and done in part because it is to defendant's direct economic benefit to delay payment due to high rates of interest, as to subject defendant to punitive damages in the amount of $1 million."

It appears that on April 14, 1981, Hogan & Hartson, counsel for the defendant, wrote to then counsel for the plaintiffs the letter annexed hereto as Exhibit A. This is the basis of the second cause of action and it is clear that the "agents" referred to in ¶ 12 of the above-quoted complaint are Hogan & Hartson.

Defendant has moved to dismiss the second cause of action and plaintiffs have asked the Court to defer ruling on that

motion until they have had the opportunity to examine certain documents in defendant's claim file, described in ¶ 7 of the affidavit of Harold E. Marshack, III, submitted on behalf of the defendant in opposition to such discovery. Plaintiffs have moved to compel production of these documents, which defendant resists on the grounds of attorney-client privilege and the work product rule.

At oral argument on these motions, the Court ruled that consideration of plaintiffs' motion to compel production should precede that of defendant's motion to dismiss and suggested, so as to obviate conjecture as to what the withheld documents might contain, that they be inspected *in camera,* a suggestion acceded to by the parties. This *in camera* inspection has taken place and the Court, having given substantial weight to the significant, generally compelling considerations underlying the attorney-client privilege and work product rule, is nevertheless of the view that the nature and sufficiency as a matter of pleading of plaintiffs' second cause of action present adequate ground for denying to defendant the protections it asserts herein.

Inasmuch as the Court's jurisdiction in this case is founded on 28 U.S.C. § 1332, questions arising herein concerning privilege are governed, pursuant to Fed.R.Evid. 501, by New York law. The applicable statute is N.Y. CPLR § 4503(a) (McKinney Supp.1981). That the documents in issue fall within the literal terms of this statute is not controverted.

■ However, in New York, as in virtually all jurisdictions, there exist several recognized instances in which the privilege is deemed inapplicable. *See, e.g.,* 5 Weinstein, Korn & Miller, N.Y.Civ.Prac. ¶¶ 4503.07, .08; 8 Wright & Miller, Fed.Prac. & Proc. ¶ 2017. One such instance is where the communication sought to be disclosed was made in furtherance of what the client knew or reasonably should have known to be a crime or fraud. *See In re Associated Homeowners & Bus. Org.,* 87 Misc.2d 67, 385 N.Y.S.2d 449, 450 (Sup.Ct.1976); 2 Weinstein's Evidence, ¶ 503(d)(1)[01], at 503–70; Note, The Future Crime or Tort Exception to Communications Privilege, 77 Harv.L.Rev. 730, 730–33 (1964).

Numerous opinions have, at least in dictum, formulated this exception to the privilege in broader terms. For example, in *People v. Belge,* 59 A.D.2d 307, 399 N.Y. S.2d 539, 540 (4th Dep't 1977), the court quoted with approval Judge Wyzanski's formulation of this exception in *United States v. United Shoe Mach. Corp.,* 89 F.Supp. 357, 358–59 (D.Mass.1950), which holds unprotected by the privilege any communication that "relates to a fact of which the attorney was informed . . . for the purposes of committing a crime or *tort*" (emphasis supplied). *See also* Uniform Rule of Evidence 26(a) (1953).

■ We are convinced that the consideration underlying the firmly established denial of the privilege *for communications in furtherance of crime or fraud, viz.,* that the privilege's policy of promoting the administration of justice would be undermined if the privilege could be used as a cloak or shield, 2 Weinstein's Evidence ¶ 503(d)(1)[01], at 503–70, is equally compelling with regard to communications in furtherance of the intentional tort of which plaintiffs herein complain. To deny the protection of the privilege to communications in aid of fraud while granting it to communications in aid of another intentional tort would draw a too "crude boundary", as characterized by Wigmore, who also questions "how the law can protect a deliberate plan to defy the law and oust another person of his rights, whatever the precise nature of those rights may be." 8 Wigmore, Evidence § 2298, at 577 (McNaughton rev. 1961). Having examined the documents in issue, we find as to those statements to which the attorney-client privilege is applicable that they bear directly on the question whether there was the intentional infliction of emotional distress that plaintiffs allege. Accordingly, plaintiffs should be allowed the opportunity to examine these documents.

Defendant's second objection is that the documents sought are protected from discovery by the work product rule of Fed. R.Civ.Proc. 26(b)(3). While we concur with defendant's characterization of some of this matter as work product, we are persuaded that plaintiffs have nevertheless shown a "substantial need" for the discovery of this material, pursuant to the Rule. *See O'Boyle v. Life Ins. Co. of N. Am.,* 299 F.Supp. 704, 706 (N.D.Fla.1969); *Kennedy v. Senyo,* 52 F.R.D. 34, 36 (W.D.Pa.1971); *cf. Prudential Ins. Co. of America v. Marine Nat'l Exch. Bank,* 52 F.R.D. 367 (E.D.Wis. 1971); *see generally* 4 Moore's Fed.Prac. ¶ 26.64, at 26–419 to –421 & n. 7.

We recognize that a danger exists that discovery into a defendant insurer's claim file may in some instances be an unfounded fishing expedition. At this stage of the case, however, we are satisfied as to both the sufficiency as a matter of pleading of plaintiffs' second cause of action, *see Halio v. Lurie,* 15 A.D.2d 62, 222 N.Y.S.2d 759 (2d Dep't 1961) (defendant's letter to plaintiff sufficient basis for intentional infliction of emotional distress); *Long v. Beneficial Finance Co.,* 39 A.D.2d 11, 330 N.Y.S.2d 664, 668 (4th Dep't 1972) (existence of legitimate motive for defendant's act does not defeat cause of action for intentional infliction of emotional distress), and the significant bearing the sought-after documents have on that claim.

Inasmuch as the second cause of action is directed at the April 14 letter, the documents in question relate directly to whether defendant's counsel in sending such letter acted intentionally or recklessly or after careful investigation and shed light on the motive and knowledge of defendant and counsel at that time. Unlike the usual controversy involving the attorney-client privilege and/or work product rule, in which statements made by the client or attorney are only corroborative or inconsistent with the client's subsequently assumed position, here the statements sought to be discovered are themselves crucial to resolving the central issues raised by plaintiffs' second cause of action.

In light of the foregoing, defendant is directed to produce to plaintiffs' counsel, within five (5) days of this date, the documents described in ¶ 7 of the affidavit of Harold E. Marshack, III.

We emphasize that at this stage of the proceedings we deal only with the allegations of the second cause of action as they appear on the face of the complaint and the discoverability of the documents in question. Nothing contained herein should be construed as a reflection of the Court's views on whether, after the discovery has been completed, the second cause of action can survive defendant's deferred motions.

SO ORDERED.

Exhibit A

April 14, 1981

Austin F. Canfield, Jr., Esquire
Gorman & Canfield
4701 Sangamore Road
Washington, D.C. 20016

RE: Leo A. Diamond, Deceased
Airline Passengers Association, Inc.
Member No. 9669
Personal Accident Insurance Policy
No. 535001700

Dear Mr. Canfield:

We have completed our preliminary review of documents furnished us by Dr. Morowitz, Dr. Brownlee, and the Medical Records Custodian of Georgetown University Hospital. These records suggest that in late March 1980 Mr. Diamond's family advised the medical staff at Georgetown University Hospital that it wished the staff to "stop all life support measures" on the patient. As you know, Mr. Diamond died approximately six weeks later, on May 6, 1980.

This circumstance, if true, raises profound issues—not the least of which are the predominant or proximate cause of Mr. Diamond's death and the insurer's obligations under the above-referenced policy. It is quite apparent that resolving these issues will require additional investigation into both the pertinent facts and the applicable law.

We write now, before undertaking the necessary additional investigation, so as to bring the facts revealed by the medical records to your attention. In addition, we would appreciate your advice as to whether, in light of the medical record, the beneficiaries wish to forward any additional information or withdraw their claim under the policy.

We note again that our continuing review of this matter and all communications are conducted under a full reservation of Underwriter's rights under the policy. If you have any questions concerning the foregoing, please do not hesitate to contact us.

Sincerely,
HOGAN & HARTSON
By /s/ Stuart Philip Ross
Stuart Philip Ross

SPR/HEM/clh