IRVING TRUST CO., Plaintiff,

v.

Marian GOMEZ, Aquiles Farras, Maximo Gomez, Carlos Bulos, Marlene Bulos and Daniel Bulos, Defendants.

Vincente SANTANA and Lacinio Pichardo, Plaintiffs,

v.

IRVING TRUST CO.,

v.

Juan Ares GUZMAN and Juan Valero Sanchez, Defendants.

Nos. 82 Civ. 3183 (LBS), 82 Civ. 6370 (LBS).

United States District Court, S.D. New York.

June 23, 1983.

Opinion Sealed June 24, 1983, and Unsealed Dec. 7, 1983.

Corbin, Silverman, Sanseverino & Taylor, Elizabeth M. Taylor, New York City, for Irving Trust Co.

Milbank, Tweed, Hadley & McCloy, John C. Maloney, Jr., New York City, for Chase Manhattan Bank, N.A.

Butler, Fitzgerald & Potter, James M. Davis, New York City, for defendants Bulos.

## OPINION

SAND, District Judge.

The purpose of this memorandum is to set forth the basis of the Court's ruling of May 9, 1983, affirmed on reconsideration on May 31, 1983, requiring production of certain documents as to which Chase Manhattan Bank, N.A. ("Chase"), has asserted attorney-client privilege and work-product protection and which were presented to the Court on the consent of the parties for *in camera* inspection.[1] Although disclosed informally and *ex parte* to counsel for Chase, the basis for the Court's ruling is not known to counsel for Daniel Bulos, the party seeking production, nor can it be made known to him without disclosing the contents of the papers in question and thereby rendering moot the appellate review sought by Chase. We therefore hereby order that this memorandum be sealed pending determination of Chase's resort to the appellate process and we will furnish a copy of the memorandum to counsel for Chase, but not to counsel for Bulos.[2]

The background of this lawsuit relates to a fraud perpetrated by an employee of Irving Trust Company ("Irving Trust") pursuant to which Irving Trust's records were caused to reflect deposits in certain accounts not in fact received in such accounts. Withdrawals were then permitted or bank checks issued on the strength of the ficticious deposits.

Upon learning of the fraud, Irving Trust sought to attach the funds of persons and companies which it allegedly believed had participated in the scheme. One of those whose funds were attached was defendant and counterclaimant Daniel Bulos, a dealer in foreign currencies in the Dominican Republic. Sometime in March, 1982, Bulos had purchased several hundred thousand dollars from Irving Trust customers who apparently had been beneficiaries of the false-credit scam. He deposited such sums in his Chase account and, on the basis of such deposits, wrote and sold three $100,000 checks, all of which Chase paid. Irving Trust obtained *ex parte* orders of attachment on Bulos' accounts at Chase in New York and at Chase International Bank-Miami ("Chase International").

After a hearing on Irving Trust's motion to confirm and Bulos' motion to vacate, this Court vacated the New York attachment of Bulos' Chase account, on the grounds that Irving Trust had failed to show a likelihood of success on the issue whether Bulos was a holder in due course of the checks he had purchased. *See* 550 F.Supp. 773, 777–80 (S.D.N.Y.1982).

On May 19, 1982, two days after the expiration on its own terms of the attachment on Bulos' Chase International account, Chase International refused Bulos' demand for the release of those funds and filed a statutory interpleader action in federal district court in Miami. On June 21, 1982, after repeated unavailing requests by counsel for Bulos for a prompt hearing date on his pending motion to dismiss and in the face of Bulos' urgent need for the frozen funds, *see* Davis Reply Affidavit, dated May 4, 1983, ¶¶ 10–13, the action was settled upon agreement of the parties that Chase International be discharged in interpleader as an "innocent stakeholder". Irving Trust withdrew its claim to the funds in the account, and judgment on stipulated facts was entered and the funds ordered released to Bulos.

Bulos allegedly sustained severe personal and business losses by virtue of the attachment of his funds on deposit at Chase in New York and at Chase Bank Internation-

---

1. Because the identity of some of the persons referred to was not apparent and the handwritten memoranda were not clear, the Court conferred by telephone with counsel for Chase while reviewing the documents.

2. We recognize that the determination of Bulos' status as a holder in due course necessitates consideration of whether Bulos "took for value", in addition to whether he acted in good faith. However, inasmuch as Chase has failed in any way to suggest that the basis for its actions lay with concern as to whether Bulos, in fact, took for value and in light of our prior findings in these proceedings, we decline to attempt *sua sponte* to rationalize Chase's actions on that ground.

al-Miami ("Chase International"). Bulos has asserted and is pursuing in this action a counterclaim against Irving Trust for his alleged damages arising from these attachments. The instant discovery issue arose when Bulos, in the course of his discovery as against Irving Trust, sought from Chase, then a nonparty witness, documents reflecting any agreement between Irving Trust and Chase regarding Bulos' accounts. Bulos also sought leave (since granted) to amend its counterclaims to add Chase as a party.

Among those documents requested by Bulos, but denied by Chase on the grounds of attorney-client privilege and work-product rule, were documents representing communications between Chase, Chase International, and the Florida counsel retained by Chase International to handle the interpleader litigation. Several bases were asserted by Bulos for the nonapplicability of these privileges here, most notably the contention that these communications were in furtherance of tortious and criminal conduct on the part of both Chase and Irving Trust. Chase's grounds in opposing discovery were primarily first, that the "crime-fraud" exception to the attorney-client privilege does not encompass torts of the sort Chase is alleged to have committed in this action, and second, that Bulos has failed to make out a *prima facie* case of tortious or criminal behavior, as to which the requested documents would relate.

For the reasons set forth below, the Court is of the opinion that Bulos has made a sufficient *prima facie* showing of intentional or reckless tortious behavior on the part of Chase and that the requested documents, particularly the telephone memorandum of April 19, 1982 (attached hereto as Exhibit 1), are highly significant to Bulos' claim that Chase abdicated its responsibility to him as a customer and depositor and acted tortiously in concert with Irving Trust.

In concluding that Bulos has borne his burden of making a *prima facie* showing, we deem the following significant. On April 16, 1982, representatives of Chase and Irving Trust met in New York to discuss the internal bank fraud that had been visited upon Irving Trust. Among those in attendance was Robert M. MacAllister, Associate Counsel at Chase. In the course of that meeting, Irving Trust asked Chase's assistance in recovering the defrauded sums. MacAllister's handwritten notes of the meeting contain detailed descriptions, apparently set out by Irving Trust and discussed at the meeting, relating to the three checks drawn by Bulos on his Chase account.

These notes contain also a reference to "Royal Bk John Hayward", the addressee of a draft telex that MacAllister was to prepare that same day. Exhibit B to Davis Affidavit, at 5, dated April 7, 1983. In that draft telex to Mr. Hayward at the San Juan office of the Royal Bank of Canada, MacAllister requested that a hold be placed on $200,000 in the account of one of its depositors, a payee on one of Bulos' checks. Significantly, MacAllister stated: "We have no reason to believe that our customer [Bulos] had any knowledge that the source of funds was fraudulent." Exhibit C to the Davis Affidavit, April 7, 1983.

To the same effect, MacAllister has testified at his pretrial deposition that he is not aware that Chase ever had any reason to believe Bulos had any knowledge that the source of the funds was fraudulent. With regard to Bulos' account at Chase International in Miami, neither Chase nor Chase International could have reasonably believed that funds contained in that account were capable of being traced to the Irving Trust fraud. Several weeks earlier and at the recommendation of Chase International, Bulos had withdrawn $376,237.99 from a Chase branch in London, England and had deposited that amount at Chase International Miami.

Despite this acknowledged unawareness on Chase's part of anything but Bulos' good faith acquisition of the sums deposited in, drawn upon, and paid from his New York account and the total absence of any colorable association between the funds of which Irving Trust had been defrauded and Bulos'

Chase International account, Irving Trust, Chase and Chase International came to an agreement, memorialized in a letter from Irving Trust Vice-President and Counsel William F. Connell to MacAllister, dated April 23, 1982, by which Irving Trust agreed to indemnify and hold harmless Chase and Chase International in the event they were to sustain any loss from holding $300,000 of Bulos' funds. Exhibit E to Davis Affidavit, dated April 7, 1983.

Among the documents produced for our *in camera* inspection is a memorandum of a telephone conversation between MacAllister and Walter Close, on April 19, 1982 (attached hereto as Exhibit 1, and listed as Item No. 24 on the Schedule of Documents Not Produced). The concluding sentence of this memorandum states: "Irving will give us questions to ask Bulos if we talk to him."

We are satisfied for purposes of this motion as to the substantiality of Bulos' claim that Chase, at the instigation and with the support of Irving Trust, deprived Bulos of the rightful use of his funds although it knew of no grounds to do so.[3] We are further persuaded that the requested documents represent communications by and between MacAllister, other Chase and Chase International employees, and their Florida counsel in apparent furtherance of this allegedly unlawful course of action.

■ The above-quoted memorandum vividly suggests the role that Chase agreed to play in its dealings with Bulos. The memorandum may well reflect Chase's decision, despite the acknowledged absence of any grounds to do so, that Chase would not only freeze Bulos' funds but also blindly and covertly follow Irving Trust's directions in its dealings and conferences with Bulos. Such communications, in furtherance of Chase's tortious conduct, are not protected by the attorney-client privilege. Even assuming *arguendo* Chase's contention that its alleged course of conduct does not fall within the parameters of a crime, *but see* New York Penal Law § 155.35, or within those of fraud, we find that distinction without significance under the facts presented here. The interests furthered by the privilege—full and frank discussions between an attorney and his client for the purpose of promoting observance of the law, *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981)—are not impinged upon by compelling discovery of communications sought or rendered in furtherance of what is known or reasonably should be known to be unlawful conduct regardless of whether such conduct constitutes fraud or any other intentional tort. *See generally Diamond v. Stratton,* 95 F.R.D. 503 (S.D.N.Y.1982).

■ Nor do we find availing Chase's argument that the settlement and judgment in the Florida interpleader proceeding, premised in part on the stipulation that Chase International is "an innocent stakeholder", precludes Bulos' assertion here that Chase acted in bad faith and thus negates Bulos' *prima facie* showing. It would be inequitable to estop Bulos from now raising claims of bad faith against Chase, the grounds of which may have been wholly unknown to Bulos at the time of entering into this stipulation. *Cf. Francis I. du Pont & Co. v. Sheen,* 324 F.2d 3, 6 (3d Cir.1963). Moreover, the fact that Bulos may have, for purposes of recovering the use of his funds, released *Chase International* from any claims arising out of the interpleader action should not preclude him from asserting, at least for purposes of this discovery motion that *Chase,* pursuant to Irving Trust's instigation, acted in bad faith. Such conclusion is especially compelling where, as here, a nonparty to the previous suit subsequently attempts to label as preclusively determined a fact therein stipulated to solely for purposes of entering judgment, *cf.* 1B Moore's

---

**3.** On November 4, 1983, the Second Circuit Court of Appeals denied Chase Manhattan's application for a writ of mandamus. Accordingly, on November 22, 1983, we ordered this Opinion and the underlying documents unsealed but stayed the effect of the order to allow application for a further stay to be made to the United States Supreme Court. On December 5, 1983, the Supreme Court refused to issue a further stay, —— U.S. ——, 104 S.Ct. 520, 78 L.Ed.2d 705, and this Opinion and the documents became unsealed.

Federal Practice, ¶ 0.444[4] at 4028–29 (1982) (arguing that judgments predicated on stipulated facts should be accorded the lessened preclusive effect attaching to judgments on consent), and under circumstances bearing some indicia of duress, see Davis Reply Affidavit, dated May 4, 1983, ¶¶ 10–13.

■ Nor does the work-product doctrine bar discovery of this memorandum. Bulos' *prima facie* showing and the direct relationship that the memorandum bears to Bulos' claim of tortious conduct, as well as the absence therein of any "mental impressions, conclusions, opinions, or legal theories", fully satisfy the requirements for discovery of documents under F.R.Civ.P. 26(c)(3).

Moreover, to the extent that Chase at this point urges upon the Court defenses to Bulos' newly filed counterclaim against Chase, we make no ruling as to the merits of such defenses and note simply that Bulos' request for the documents at issue is in any event within the proper scope of discovery as against Irving Trust.[4] Regardless of the disputed sufficiency of his counterclaim against Chase, Bulos should be afforded the discovery to which he is entitled in connection with his other counterclaim.

As a final matter, we wish to make clear that after advising counsel for Chase of the Court's intent to permit discovery of the April 19th memorandum and those related documents necessary to place this memorandum in context, the Court inquired whether Chase wished to seek redaction of any portion of the memorandum or any other items listed in the schedule of documents not produced. Chase, however, did not seek such redaction.

On the basis of the reasoning stated above, the Court concluded that Bulos' motion to compel discovery should be granted, and Chase's cross-motion for a protective order denied.

---

4. Of course, since Irving Trust has agreed to indemnify Chase, Bulos' amendment of his complaint, if legally sufficient, may in economic terms be simply another basis upon which Irving Trust would be liable to Bulos; but Bulos, of course, is not bound by this agreement and is free to pursue its claims against Chase.