Cecily **COLEMAN**, Plaintiff,

v.

**AMERICAN BROADCASTING COMPANIES, INC., et al.,**
**Defendants.**

**Civ. A. No. 84–1594.**

United States District Court,
District of Columbia.

May 1, 1985.

Separate Memorandum Opinion
May 17, 1985.

Linda Huber, Mark Lane, Washington, D.C., for plaintiff.

Stuart M. Gerson, Ronald M. Green, Kathleen M. Williams, Epstein, Becker, Borsody & Green, P.C., Washington, D.C., for defendant.

ARTHUR L. BURNETT, Sr., United States Magistrate.

Upon consideration of plaintiff's motion to compel discovery withheld by the defendants upon a claim of corporate attorney/client privilege, filed April 4, 1985; the defendants' opposition to motion to compel despite defendants' invocation of the attorney/client privilege, filed April 15, 1985; the plaintiff's reply to this opposition by the defendants, filed April 24, 1985; oral arguments by counsel at a hearing before the undersigned Magistrate on April 24, 1985; a review of the entire court file; and this matter having been referred to the undersigned Magistrate by Order of the Court (Parker, J.), filed April 17, 1985, it is hereby this 1st day of May, 1985,

ORDERED that plaintiff's motion to compel discovery withheld by the defendants upon a claim of corporate attorney/client privilege be and is hereby DENIED for the reasons set forth hereinafter.

■ A review of the case law on the attorney/client privilege has not yielded a single decision which extends the traditional exceptions to the privilege, i.e. for communications in aid or furtherance of a crime or fraud, to communications allegedly in furtherance of an attempt to conceal or "cover up" sex discrimination, sexual harassment or other violations of the federal civil rights laws. Similarly, our research of the case law did not reveal any precedent for subsuming the alleged misconduct on the part of the defendant attorneys within the civil fraud exception to the attorney-client privilege.

■ Further, the Magistrate notes that even were he to adopt the view that an exception to the attorney-client privilege should exist for the alleged misconduct of attorneys in aiding in retaliation or in unlawful sex discrimination or sexual harassment conduct, it is apparent from the pleadings and oral representations as to factual matters and arguments by counsel that the plaintiff has failed to make an adequate factual showing to even require an *in camera* examination of documents or other materials for which the privilege has been claimed. As the court in *International Telephone and Telegraph Corporation v. United Telephone Company of Florida*, 60 F.R.D. 177, 180 (M.D.Fla.1973) noted: "Once the elements of the attorney-client privilege are established, that privilege has, in the past, been as absolute as any known in law." In order to defeat this important privilege, more is necessary than mere allegations of wrongdoing on the part of the attorney or naming the attorneys as defendants in the litigation. The Supreme Court of the United States, in *Clark v. United States*, 289 U.S. 1, 15, 53 S.Ct. 465, 469–70, 77 L.Ed. 993 (1932) made clear that: "To drive the privilege away, there must be 'something to give colour to the charge;' there must be '*prima facie* evidence that it has some foundation in fact.'"

Here, the plaintiff has failed to come forward with such a *prima facie* showing of misconduct to warrant further consideration of whether an exception should exist

for such alleged misconduct as charged by the plaintiff in this case. A more detailed separate opinion will be filed elaborating further on the applicable precedent.

### Separate Memorandum Opinion

This matter came before the undersigned Magistrate on plaintiff's motion to compel discovery withheld by the defendants upon a claim of corporate attorney-client privilege, filed April 4, 1985. Defendants filed an opposition on April 15, 1985 and plaintiff filed a reply on April 24, 1985. After hearing oral representations and arguments by counsel on April 24, 1985, the Magistrate issued an Order, filed May 1, 1985, denying plaintiff's motion to compel and setting forth the reasons for that denial. Further, the Magistrate then stated that a separate memorandum opinion would be filed elaborating upon the relevant judicial precedent and application thereof to the factual situation presented in this case.

In her amended complaint, filed April 2, 1985, plaintiff alleges that defendants, American Broadcasting Companies, Inc. (hereinafter ABC, Inc.); James Abernathy, former Vice-President, Corporate Affairs; Everett M. Erlick, Executive Vice-President and General Counsel; Peter Cusack, Vice-President, Human Resources; and Jeffrey S. Rosen, Senior General Attorney, Employment Practices, Corporate Legal Affairs, engaged in a course of conduct which deprived her of her civil rights under the District of Columbia Human Rights Act of 1977, Title 1, District of Columbia Code §§ 2512 and 2525 and which also involved the commission of the common law torts of assault, battery, intentional infliction of emotional distress, and defamation against her. More specifically, plaintiff Cecily Coleman has alleged that defendant James Abernathy engaged in repeated acts of sexual harassment and that when she complained about his conduct to an official at ABC, Inc., defendants Erlick, Cusack, and Rosen acted in a concerted manner to cover up the illegal conduct and to retaliate against her in various ways culminating in her termination from employment with ABC, Inc. on May 1, 1984.

In her motion to compel, plaintiff has contended that defendants have sought to evade discovery, i.e to avoid answering interrogatories and deposition questions and furnishing documents and records pursuant to requests for production of documents, on the basis that the disclosure would reveal communications subject to the attorney-client privilege. According to plaintiff, the information sought is not protected by the attorney-client privilege on three grounds: 1) the communications related to business matters and not the giving of legal advice, 2) the communications fell within an exception to the attorney-client privilege since they were made in furtherance of illegal conduct, and 3) even if privileged, the attorney-client privilege was waived with regard to some of these communications. Defendants have maintained that they have adequately established in the record in this case that the communications concerned the giving of legal and not business advice, and thus were properly attorney-client matters, that no exception to the attorney-client privilege is applicable and that there has been no waiver of the privilege.

## THE ATTORNEY–CLIENT PRIVILEGE

The attorney-client privilege is the oldest privilege protecting confidential communications. 8 J. Wigmore, Evidence § 2290 at 542 (McNaughton rev.1961); *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The privilege is also one of the most sacred and absolute. "Once the elements of the attorney-client privilege are established, that privilege has, in the past, been as absolute as any known in law." *International Telephone and Telegraph Corporation v. United Telephone Company of Florida*, 60 F.R.D. 177, 180 (M.D.Fla.1973). *See also, Securities and Exchange Commission v. Gulf & Western Industries, Inc.*, 518 F.Supp. 675, 680 (D.D.C.1981). As explained by the Supreme Court, the policy underlying the attorney-client privilege is "... to encourage full and frank communication between attorneys and their clients and thereby pro-

mote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981).[1] *See also*, 8 J. Wigmore, Evidence §§ 2290–2291 (McNaughton rev. 1961).

Competing against the salutory benefits of the attorney-client privilege is a recognition in the law that the privilege impairs the fact-finding process at the heart of the adversary system and the obtaining of the truth. Recognition of this balancing of interests has caused courts and commentators to suggest that the attorney-client privilege should be narrowly construed.[2] *See, In Re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir.1984) for a good discussion of this point and *Valente v. Pepsico, Inc.*, 68 F.R.D. 361, 367 (D.Del.1975). Further, in view of the "costs" of the attorney-client privilege, courts have established rigorous standards for its application. Two of the most frequently cited formulations of the attorney-client privilege are:

"The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client." *United States v. United Shoe Machinery Corporation*, 89 F.Supp. 357, 358–59 (D.Mass.1950).

"(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." 8 J. Wigmore, Evidence § 2292 at 554 (McNaughton rev. 1961).[3]

## BUSINESS V. LEGAL ADVICE

■■■ It is apparent from these two formulations of the attorney-client privilege that communications between an attorney and another individual which relate to business, rather than legal matters, do not fall within the protection of the privilege. "[T]he communication must be with an attorney for the express purpose of securing legal advice. *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). *United States v. Davis*, 636 F.2d 1028, 1043 (5th Cir.1981). Business and personal advice are not covered

---

**1.** Similarly, the public policy underlying the civil rights laws, i.e. to remedy unlawful discrimination and sexual harassment and to eradicate these practices from the workplace, should support personnel and management officials consulting with in-house counsel to resolve such complaints. If extensive discussions between management officials and counsel alone were sufficient to vitiate the attorney-client privilege, based on the conjecture that the lawyers had acted in collusion with management, then this would disserve the interest of encouraging management to obtain legal advice to resolve these complaints. Further, extensive discussions between management officials and counsel are not sufficient, *per se*, to establish improper purpose or wrongful conduct by either.

**2.** "Its benefits are all indirect and speculative; its obstruction is plain and concrete.... It is worth preserving for the sake of a general policy, but it is nonetheless an obstacle to the investigation of the truth. It ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." 8 J. Wigmore, Evidence § 2291 at 554 (McNaughton rev. 1961).

**3.** It is important to note that the burden of proof is on the party who is claiming "... the privilege to show that the consultation was professional and confidential." *Securities and Exchange Commission v. Gulf & Western Industries, Inc.*, 518 F.Supp. 675, 682 (D.D.C.1981).

by the privilege. *Id.* at 1044." *Securities and Exchange Commission v. Gulf & Western Industries, Inc.*, 518 F.Supp. 675, 681 (D.D.C.1981). Thus, once a claim of attorney-client privilege has been made with respect to certain communications, and a *prima facie* showing has been made that they relate to legal matters, the party seeking to overcome the invocation of the privilege must make some showing that the communications did not involve the giving of legal advice, but rather related to business matters and considerations.

 The Magistrate observes that legal and business considerations may frequently be inextricably intertwined. This is inevitable when legal advice is rendered in the context of commercial transactions or in the operations of a business in a corporate setting. The mere fact that business considerations are weighed in the rendering of legal advice does not vitiate the attorney-client privilege. In the present case, there has been an ample showing that the communications between the management officials of ABC, Inc. and their in-house counsel related to the giving of legal advice independent of whether business ramifications might have been involved.[4] Therefore, the Magistrate concludes that the communications are within the protection of the attorney-client privilege as involving the giving of legal advice and are not disclosable as communications involving business discussions and the exercise of business judgment.

## THE "CRIME–FRAUD" EXCEPTION

 It is also well-recognized that certain exceptions exist with regard to the usual protection afforded attorney-client communications. Perhaps the best known of these is the so-called "crime-fraud" exception. Thus, communications between an attorney and his/her client in furtherance of the commission of a crime or fraud will not be protected from disclosure under the law. "The privilege takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told."[5] *Clark v. United States*, 289 U.S. 1, 15, 53 S.Ct. 465, 469–70, 77 L.Ed. 993 (1933). *See, e.g., United States v. Bob*, 106 F.2d 37 (2d Cir.), *cert. denied*, 308 U.S. 589, 60 S.Ct. 115, 84 L.Ed. 493 (1939) and *In Re Sealed Case*, 754 F.2d 395 (D.C.Cir.1985).

 Two further aspects of the "crime-fraud" exception are noteworthy. First, communications between an attorney and his/her client concerning *past incidents* of criminal or fraudulent conduct do not fall within this exception and therefore are fully protected by the attorney-client privilege. Only communications in regard to ongoing or future misconduct fall outside the scope of the privilege.[6] This distinction goes to the very core of the policies underlying the attorney-client privilege. If the privilege is meant to encourage frank discussions between the client and counsel to promote the observance of the law and zealous advocacy by the attorney for the client, then communications made with a view toward engaging in and/or perpetuating criminal or fraudulent conduct fall

---

4. *See, e.g.*, Ornes depo., September 14, 1984, pg. 40, lines 6–19; pg. 57, lines 18–22; pg. 58, lines 1–15; pg. 148, lines 18–21; Rosen depo., November 26, 1984, (Volume I) pg. 7, lines 5–22; pg. 8, lines 1–22; pg. 9, lines 1–6; pg. 10, lines 9–22; pg. 12, lines 12–16; pg. 39, lines 2–22; pg. 40, lines 1–6; pg. 45, lines 18–22; pg. 46, lines 1–2; and Cusack depo., November 2, 1984, pg. 10, lines 24–25; pp. 11–13; pg. 14, lines 2–3; pg. 44, lines 5–25; pg. 45, 1–14; pg. 88, lines 8–25; pg. 89, lines 2–23.

5. It is important to note that it is not necessary to establish that the attorney had knowledge that the client intended to use information imparted to him/her for criminal or fraudulent purposes. The attorney may be entirely innocent or simply ignorant of the evil motive of the client, yet the privilege is still vitiated under these circumstances. *See, e.g., In Re Sealed Case*, 676 F.2d 793, 812 (D.C.Cir.1982), 8 J. Wigmore, Evidence § 2298 at 573, 577 (McNaughton rev. 1961).

6. *See, e.g., In Re Grand Jury Proceedings*, 604 F.2d 798, 804 (3rd Cir.1979) for a case in which the timing of the alleged misconduct was considered critical to the application of the attorney-client privilege.

outside these laudable aims and do not deserve the same sort of solicitous protection. As Wigmore has put it: "This is for the logically sufficient reason that no such enterprise falls within the just scope of the relation between legal adviser and client." 8 J. Wigmore, Evidence § 2298 at 572 (McNaughton rev. 1961).

The second important aspect of the "crime-fraud" exception to the attorney-client privilege is the quantum of "evidence" necessary to vitiate the privilege and who has the burden of establishing the applicability of an exception.[7] In recognition of the importance of the privilege and the policies which it serves, courts have held that a *prima facie*, or probable cause, showing that the communications were made in the furtherance of a crime or fraud must be made before the privilege is defeated.[8] To invoke the "crime-fraud" exception to the privilege, it is not necessary to prove beyond a reasonable doubt that the attorney or client were attempting or did commit a crime or fraud. However, more is necessary than mere allegations of wrongdoing or simply naming the attorney as a defendant in the litigation. "To drive the privilege away, there must be 'something to give colour to the charge;' there must be '*prima facie* evidence that it has some foundation in fact.'" *Clark v. Unit-*

ed States, 289 U.S. 1, 15, 53 S.Ct. 465, 469–70, 77 L.Ed. 993 (1933).[9]

## SCOPE OF THE "CRIME–FRAUD" EXCEPTION

While the "crime-fraud" exception to the attorney-client privilege has been confined, almost by definition, to instances of alleged criminal or fraudulent conduct, there are court opinions which have formulated the exception in broader terms. For instance, the court in *United Shoe, supra,* provided for an exception if attorney-client communications were "... (d) for the purpose of committing a crime or *tort*; ..." 89 F.Supp. 357, 358 (D.Mass.1950) (emphasis added). *See also, Pfizer Inc. v. Lord,* 456 F.2d 545, 549 (8th Cir.1972) (crime or tort); *Duplan Corporation v. Deering Milliken, Inc.,* 397 F.Supp. 1146, 1172 (D.S.C.1975) (crime, fraud or tort); *International Telephone and Telegraph Corporation v. United Telephone Company of Florida,* 60 F.R.D. 177, 180 (M.D.Fla.1973) (crime, fraud or other substantial abuses of the attorney-client relation); *In Re Grand Jury Proceedings,* 73 F.R.D. 647, 651 (M.D. Fla.1977) (tortious or criminal activity); *In Re Westinghouse Electric Corporation Uranium Contracts Litigation,* 76 F.R.D. 47, 57 (W.D.Pa.1977) (intended or present, continuing illegality); and *Valente v. Pepsico, Inc.,* 68 F.R.D. 361, 367 (D.Del.1975) (fraudulent or tortious conduct).[10]

---

**7.** The burden of proof is on the party seeking to defeat the privilege to establish that the conduct of the attorney or client was such that it constituted a fraud, crime or other illegality. *See, e.g., In Re Sealed Case,* 754 F.2d 395, 399 (D.C. Cir.1985).

**8.** *See In Re Sealed Case,* 754 F.2d 395, 399 n. 3 (D.C.Cir.1985) for a good discussion of the various standards concerning the evidentiary showing necessary to invoke the "crime-fraud" exception to the attorney-client privilege. There, the Court cited with approbation the Second Circuit test of "probable cause" and noted that there is little difference between the two tests. *See, In Re Grand Jury Subpoena Duces Tecum,* 731 F.2d 1032, 1039 (2d Cir.1984).

**9.** While there appears to be some difference of view by the federal courts on the question of whether the "privileged" communications themselves may be used to establish this *prima facie*

showing of wrongdoing, *compare, United States v. Shewfelt,* 455 F.2d 836 (9th Cir.), *cert. denied,* 406 U.S. 944, 92 S.Ct. 2042, 32 L.Ed.2d 331 (1972) (independent showing of crime or fraud required) and *In Re Berkley and Company, Inc.,* 629 F.2d 548 (8th Cir.1980) (*in camera* review of the disputed documents may be considered), the District of Columbia Circuit has indicated that in appropriate circumstances, "... the subpoenaed material itself may provide *prima facie* evidence of a violation." *In Re Sealed Case,* 676 F.2d 793, 815 (D.C.Cir.1982).

**10.** Wigmore has also suggested that the "crime-fraud" exception to the attorney-client privilege should be broader. "...(I)t is difficult to see how any moral line can properly be drawn at that crude boundary, or how the law can protect a deliberate plan to defy the law and oust another person of his rights, whatever the precise nature of those rights may be." 8 J. Wigmore, Evidence § 2298 at 577 (McNaughton rev.

Similarly, at least two District of Columbia Circuit cases have formulated the exception in broader language. The Court in *In Re Sealed Case*, 676 F.2d 793, 812 (D.C. Cir.1982), in a context dealing with the attorney work-product doctrine and noting the similarity of that doctrine to the attorney-client privilege,[11] framed the exception as follows: "... crime, fraud, or other type of misconduct fundamentally inconsistent with the basic premises of the adversary system." Later, in *In Re Sealed Case*, 754 F.2d 395, 399 (D.C.Cir.1985) the court reaffirmed this broader language, in the specific context of dealing with the exception to the attorney-client privilege, characterizing the exception as pertaining to "crime, fraud or other misconduct."

Often these expansions of the "crime-fraud" exception have occurred in business-related areas such as patent, antitrust or securities litigation.[12] However, our research has revealed at least two federal cases in which the courts have directly addressed the question of whether the attorney-client privilege protects communications made in furtherance of non-business torts. In *Hyde Construction Company v. Koehring Company*, 455 F.2d 337, 342 (5th Cir.1972), the court was confronted with the issue of whether the attorney-client privilege is preserved when the commission of a tort (there, abuse of process) is alleged. Finding no Mississippi state case so holding, the court declined to take this further step; it held that communications made in furtherance of a tort remain protected by the privilege. However, it is important to note that in *Hyde*, the court found a waiver of the attorney-client privilege on the facts. In contrast, the court in *Diamond v. Stratton*, 95 F.R.D. 503 (S.D. N.Y.1982) held that there is an exception to the attorney-client privilege for communications made in furtherance of a non-business, non-fraud type of tort, in that case, intentional infliction of emotional distress, stating:

> "We are convinced that the consideration underlying the firmly established denial of the privilege for communications in furtherance of crime or fraud, *viz*, that the privilege's policy of promoting the administration of justice would be undermined if the privilege could be used as a cloak or shield, 2 Weinstein's Evidence ¶ 503(d)(1)[01], at 503–70, is equally compelling with regard to communications in furtherance of the intentional tort of which plaintiffs herein complain." *Id* at 505.[13]

Thus, at least one court has expanded the "crime-fraud" exception to the attorney-client privilege to include communications made in furtherance of intentional, non-business torts, which cannot realistically be placed in the category of being a fraud.

Turning now to the facts in this case, it is apparent that the alleged conduct of defendants Erlick, Cusack, and Rosen does not fall within the "traditional" parameters of the "crime-fraud" exception to the attorney-client privilege. That is, while the de-

---

1961). Similarly, the Magistrate finds it difficult to determine the rationale for vitiating the attorney-client privilege in the case of a civil fraud and not doing so in case of alleged sex discrimination or sexual harassment. It is clear that the law seeks to prevent both types of illegal or wrongful conduct.

**11.** The Court specifically observed: "An exception or waiver of the work product privilege will also serve as an exception or waiver of the attorney-client privilege, since the coverage and purposes of the attorney-client privilege are completely subsumed into the work product privilege." 676 F.2d 793, 812 (D.C.Cir.1982).

**12.** *See, e.g., Duplan* (fraud on Patent Office and business tort in form of antitrust violation);

*Valente* (violation of federal securities laws); *Pfizer* (fraud on Patent Office and violation of Sherman Act); *Kockums Industries Limited v. Salem Equipment, Inc.*, 561 F.Supp. 168, 171 (D.Or.1983) (fraud on Patent Office or court) (quoting from *Portland Wire and Iron Works v. Barrier Corp.*, Civ. No. 75–1083 (D.Or. May 20, 1980) (Burns, J.) op. at 10–11 "'Communications made to further a business tort such as an antitrust violation may also vitiate the attorney-client privilege.'")

**13.** Similarly, in *Irving Trust Co. v. Gomez*, 100 F.R.D. 273 (S.D.N.Y.1983), a case decided the following year, the court reaffirmed its holding in *Diamond* and held that the attorney-client privilege did not protect communications made in furtherance of an intentional tort.

fendants' alleged conduct, if proven to be true, would be illegal, it would not amount to a crime or fraud. Similarly, the conduct of these defendants does not constitute a business-related tort such as a violation of antitrust or securities laws. Therefore, the only precedent for extending the "crime-fraud" exception to include other types of misconduct and thereby exempting the communication in relation thereto from the protection of the attorney-client privilege is the *Diamond* case. The Magistrate finds the reasoning of the court in *Diamond*, and also Wigmore's discussion on this point, to be persuasive. It is more than incidentally interesting that the tort complained of in *Diamond*, i.e. intentional infliction of emotional distress, is often alleged as a companion cause of action in sex discrimination and sexual harassment cases. The present case amply demonstrates this point. Plaintiff here has alleged not only sexual harassment and retaliation, but also assault, battery, defamation, and intentional infliction of emotional distress.

 While the Magistrate would be inclined to expand the scope of the "crime-fraud" exception or to extend the exception in a proper case,[14] such as in a case in which the discovery had disclosed independent evidence from depositions of witnesses or from document production that the attorney affirmatively participated in a cover-up of sexual harassment activities, or in the reprisal action, or obstructed the discovery process in such a case by withholding documents required to be produced or in destroying documents, *see, e.g., In Re Sealed Case,* 754 F.2d 395, 400–01 (D.C. Cir.1985), a closer analysis of the factual representations offered by the plaintiff does not warrant taking this step in this case. As noted above, to invoke the "crime-fraud" or other misconduct exception to the attorney-client privilege, the party alleging misconduct must make a *prima*

*facie* or probable cause showing that such misconduct occurred. After full consideration of both the written submissions of plaintiff's counsel and their oral representations and arguments at the hearing before the court, the Magistrate concludes that plaintiff in this case has failed to proffer sufficient evidence to rise to the level of a *prima facie* showing. Further, the Magistrate is of the view that plaintiff has failed even to put forward enough factual information to require the Magistrate to conduct an *in camera* examination of the "confidential" documents themselves in an effort to determine whether these documents might raise the level of proof to a *prima facie* showing. *See, In Re Sealed Case,* 676 F.2d 793, 815 (D.C.Cir.1982). It is important to reemphasize here that mere allegations of wrongdoing or simply naming attorneys as defendants in litigation is not enough to vitiate the attorney-client privilege.

## WAIVER OF THE ATTORNEY–CLIENT PRIVILEGE

 Finally, plaintiff has asserted that the attorney-client privilege has been waived with regard to some of the communications. The mere fact that agents of the defendant ABC, Inc. have testified about the actions they took and the facts in this case in no way constitutes waiver of the attorney-client privilege. At the hearing before the Magistrate, counsel for the plaintiff were unable to cite to any instance in which a communication between a managing official and one of the in-house lawyers was disclosed in part, thus establishing a basis for revealing the entire communication, or in whole, thus requiring the disclosure of other communications related to the same matter, on the legal theory that having voluntarily and consciously disclosed some communications, there had occurred a waiver. Thus, the Magistrate also

---

**14.** Another analysis which might be adopted here would be to construe the alleged misconduct of the attorneys in this case as "constructive fraud." *See United States v. Faltico,* 586 F.2d 1267 (8th Cir.1978) for a discussion of the "constructive fraud" concept. However, the Magistrate believes that it is unnecessary to consider the merit of this approach given the foregoing analysis.

concludes that there is no merit to the waiver contention which has been advanced by the plaintiff in this case without any factual support.

The views expressed herein further elaborate upon the reasons which support the Magistrate's Order previously entered on May 1, 1985 denying plaintiff's motion to compel and also support the Order entered this date denying the motion for reconsideration or modification of the May 1, 1985 Order.