Mónica MADANES, Plaintiff,

v.

Pablo MADANES; Miguel Madanes; Leiser Madanes; Richard Ortoli; Rubin & Bailin; Rubin, Kalnick, Bailin, Ortoli, Abady & Fry, P.C.; Baltimore Ltd.; Swansea Holding, Inc.; Transmarketing and Product Research Co. Panama; Procida, Ltd., a/k/a Pegaso Ltd., and Does 1–10, Defendants.

Pablo Madanes; Miguel Madanes; Leiser Madanes; Richard Ortoli; Rubin & Bailin; Rubin, Kalnick, Bailin, Ortoli, Abady & Fry, P.C., Third–Party Plaintiffs,

v.

Jorge Miguel Pomiró, Third–Party Defendant.

No. 96 CIV 6398 LBS JCF.

United States District Court,
S.D. New York.

March 8, 2001.

Charles L. Kerr, James M. Bergin, Carrie H. Cohen, Morrison & Foerster LLP, New York City, for plaintiff.

Michael D. Schissel, David A. Weintraub, Arnold & Porter, New York City, for Pablo Madanes, Miguel Madanes, Leiser Madanes and Procida, Ltd.

Susan J. Kohlmann, Pillsbury Winthrop LLP, New York City, for Transmarketing Product Research Co. Panama.

Robert D. Piliero, George O. Richardson, III, Piliero Goldstein Jenkins & Sullivan, New York City, for Richard Ortoli, Rubin & Bailin, and Rubin, Kalnick, Bailin, Ortoli, Abady & Fry, P.C.

Ronald G. Blum, Kalkines, Arky, Zall & Bernstein LLP, New York City, for Mr. Pomiró.

## MEMORANDUM AND ORDER

FRANCIS, United States Magistrate Judge.

The plaintiff, Mónica Madanes, has brought this action pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., alleging that her brothers, Pablo, Miguel, and Leiser Madanes (the "Madanes Brothers"), together with others, have defrauded her of her share of the family's assets. Three discovery motions are now before the Court. The Madanes Brothers seek a protective order denying the plaintiff's three Applications for Issuance of Letters of Request for the Examination of Witnesses in Argentina Pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, 28 U.S.T. 2555 (the "Hague Convention"). Second, the Madanes Brothers move for an order compelling the production of documents as to which the plaintiff and the third-party defendant Jorge Miguel Pomiró have asserted the attorney-client privilege and the work product doctrine, requiring Dr. Pomiró to testify about matters with respect to which he asserted the privilege, and compelling plaintiff's attorney, Charles L. Kerr, to appear for deposition. Finally, the plaintiff moves for an order determining that the Madanes Brothers have waived the attorney-client privilege with respect to their communications with Dr. Pomiró.

Each motion will be addressed in turn.

*Letters of Request*

The plaintiff alleges that the Madanes Brothers have secreted millions of dollars of Madanes family assets in various trusts and bank accounts and have converted these funds to their own use. Accordingly, she has asked the Court to issue Letters of Request to the Republic of Argentina to take the testimony of Bernardo Rubinstein, Armando Bertucci, and Daniel Klainer. (Declaration of Michael D. Schissel dated Sept. 22, 2000 ("Schissel Decl."), Exhs. C, D, E). Mr. Rubinstein is president of a company that made payments into some of the accounts at issue pursuant to an arrangement with Manuel Madanes, the father of Mónica Madanes and the Madanes Brothers. (Declaration of Charles L. Kerr dated Oct. 20, 2000 ("Kerr Decl."), Exh. L at 112–15). Some of these payments were made directly to Pablo Madanes. (Kerr Decl., Exh. M at 272–73). Mr. Bertucci and Mr. Klainer were both granted power of attorney by Manuel Madanes with respect to one of the subject accounts. (Kerr Decl., Exh. H at M 6757).

The Madanes Brothers seek a protective order barring issuance of the Letters of Request on two grounds. First, they contend that taking testimony pursuant to Hague

Convention procedures would create a substantial risk that restricted information would be publicly disseminated. In a decision dated April 6, 1999, I determined that the Madanes Brothers' privilege against self-incrimination under Article 18 of the Argentine Constitution justified crafting a protective order in this case to place tight restrictions on the dissemination of potentially incriminating information produced in discovery. *Madanes v. Madanes*, 186 F.R.D. 279, 287–89 (S.D.N.Y.1999). The Madanes Brothers argue that they relied on these restrictions in producing information that now may become public to the extent that it is used as the basis for questioning witnesses. Moreover, the Madanes Brothers maintain that any court official hearing testimony in Argentina would have an affirmative duty to report possible criminal acts.

Second, the Madanes Brothers contend that it is unnecessary to issue the Letters of Request because Mr. Bertucci and Mr. Klainer have agreed to answer questions in a traditional deposition format in Argentina pursuant to an oath administered by a United States consular official. Although Mr. Rubinstein has not made a similar commitment, the Madanes Brothers argue that he has no new information concerning any material issue in the case and therefore need not be deposed.

The plaintiff rejects these arguments. She reasons that the Madanes Brothers may not rely on their privilege against self-incrimination to prevent her from obtaining evidence from nonparties. Furthermore, the plaintiff contends that use of Letters of Request under the Hague Convention is the *only proper* method for conducting pretrial discovery in Argentina. In particular, she argues that she cannot be confident that the witnesses will testify truthfully unless they are questioned under oath by a judicial officer as part of a formal court proceeding. Finally, she disputes the suggestion that Mr. Rubinstein's testimony would be merely cumulative.

■ Certainly, procedures outside the structure of the Hague Convention are available to parties who wish to take discovery abroad. The Hague Convention is not the exclusive avenue for obtaining discovery in a foreign country. *Société Nationale Industrielle Aérospatiale v. United States District Court for the Southern District of Iowa*, 482 U.S. 522, 539–40, 107 S.Ct. 2542, 96 L.Ed.2d 461 (1987); *First American Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 21 (2d Cir. 1998). Indeed, it is not even necessarily the means of first resort. *Aérospatiale*, 482 U.S. at 541–42, 107 S.Ct. 2542; *First American*, 154 F.3d at 21. Rather, courts must determine based on the facts of each particular case whether it is more appropriate to take discovery abroad under the Hague Convention or under the Federal Rules of Civil Procedure.

Notwithstanding these principles, the plaintiff argues that the Hague Convention is the only means for taking discovery that is acceptable to the government of Argentina. She relies on two indications that Argentina disapproves the taking of evidence by diplomatic or consular agents. First, when Argentina acceded to the Hague Convention in 1987, it excluded application of Chapter II, which establishes procedures for the taking of evidence by diplomatic offices, consular agents, and commissioners. *See* 28 U.S.C.A. § 1781, at 420–21 (West 1994) (Historical and Statutory Notes). Second, when it ratified a separate treaty, the Additional Protocol to the Inter–American Convention on the Taking of Evidence Abroad (the "Inter–American Convention"), Argentina lodged a specific reservation with respect to the provision for evidence to be taken by diplomatic or consular agents, finding that such a procedure "is considered incompatible with the norms of [Argentina's] domestic law on the matter." Website of the Organization of American States, http://www.oas.org/juridico/english/sigs/b–51.html (visited March 1, 2001).

But Argentina's objections to a procedure in which diplomatic personnel take evidence have little relevance to this case. Both Chapter II of the Hague Convention and the Additional Protocol to the Inter–American Convention appear to deal with consular officials taking testimony in a court-like setting, similar to the role that an Argentine judicial officer would otherwise play. It is therefore unsurprising that Argentina might be wary of having its judges supplanted by foreign

diplomats. However, the Madanes Brothers propose no such procedure. Rather, they suggest a conventional deposition where the only function of the consular official would be to administer the oath to the witness. There is no indication that Argentina has voiced an objection to such a procedure that is entirely independent of its judicial process.

■ Of course, the fact that Argentina has not affirmatively held that Hague Convention procedures are the only authorized means for foreign parties to take discovery does not mean that a discovering party has unlimited discretion in choosing the method. Rather, in determining whether to employ Hague Convention means or allow other procedures, a court must look to such factors as considerations of comity, the relative interests of the parties including the interest in avoiding abusive discovery, and the ease and efficiency of alternative formats for discovery. *See Aérospatiale,* 482 U.S. at 545–46, 107 S.Ct. 2542; *Rich v. KIS California, Inc.,* 121 F.R.D. 254, 257 (M.D.N.C.1988).

Here, considerations of comity do not favor the use of Hague Convention procedures. The parties to the litigation and the deponents are all private parties. This is not a suit "involving foreign states, either as parties or as sovereigns with a coordinate interest in the litigation." *Aérospatiale,* 482 U.S. at 546, 107 S.Ct. 2542. The deposition format proposed by the Madanes Brothers would not require the participation of Argentine authorities in any way. Nor is this a case where Argentine interests are implicated by a "blocking statute" that purports to forbid the production of evidence for use outside the country. *Cf. Aérospatiale,* 482 U.S. at 544 n. 29, 107 S.Ct. 2542 (blocking statute may "identify the nature of the sovereign interests in nondisclosure of specific kinds of material"); *Rich,* 121 F.R.D. at 258 (broad blocking statute owed little deference in evaluating sovereign interest).

■ The relative interests of the parties and the deponents, however, clearly favor proceeding with conventional depositions. The Madanes Brothers have a significant interest in preventing the disclosure in Argentina of information that could subject them to criminal liability there. Contrary to the plaintiff's contention, they are not asserting the privilege against self-incrimination to prevent the disclosure of information by third-parties. The witnesses will divulge whatever facts they have. Rather, the Madanes Brothers seek to preserve the confidentiality interest that this Court previously recognized in adopting the protective order. The Madanes Brothers, in turn, relied on that order in producing material that they might otherwise have withheld as incriminating. To be sure, they cannot claim that the protective order freed them from all risk of disclosure, since such an order is always subject to further modification. *See Andover Data Services v. Statistical Tabulating Corp.,* 876 F.2d 1080, 1083 (2d Cir.1989). Nevertheless, once a party has relied on a protective order, a court should make every effort to preserve the confidentiality of the evidence produced as a result; otherwise, future litigants have no incentive to make production under such an order. *See Bayer AG and Miles, Inc. v. Barr Laboratories, Inc.,* 162 F.R.D. 456, 467 (S.D.N.Y.1995). It is unnecessary here to decide whether Argentine officials would indeed have a duty to disclose information about potential criminal activity, or to predict whether they might agree to strict confidentiality provisions contained in the Letters of Request. It is enough to recognize that proceeding under the Hague Convention would create some greater likelihood that highly confidential information disclosed by the Madanes Brothers in reliance on the protective order would be publicly divulged.

By contrast, the interest of the plaintiff in proceeding under the Hague Convention is minimal. Because the witnesses would testify at deposition in Argentina pursuant to an oath administered by a United States consular officer, concerns about their testifying falsely are misplaced. (Declaration of Tonia Ouellette Klausner dated Nov. 2, 2000, ¶ 4 & Exh. A). Someone who lies under an oath administered by a consular officer is subject to prosecution for perjury in the same manner as if that person had testified falsely in a proceeding within the United States. *See* 22 U.S.C. § 4221; 18 U.S.C. §§ 1621, 1623. Moreover, testimony given pursuant to a con-

sular oath is considered sufficiently trustworthy to support a criminal conviction. *See United States v. Walker*, 1 F.3d 423, 428–29 (6th Cir.1993); *United States v. King*, 552 F.2d 833, 841 (9th Cir.1976).

The witnesses do not have a substantial interest in the form in which their testimony is taken. Two of them have explicitly agreed to a deposition format. Thus, the relative interests of the parties to the litigation and the witnesses strongly favor dispensing with Letters of Request in this case.

Finally, the flexibility of the deposition format is a factor in its favor. Although questions are put to the witnesses orally by the examining judicial officer, under the Letter of Request procedure they consist only of those inquiries submitted in advance by the parties. Thus, this procedure is more akin to the submission of written interrogatories, and it lacks the advantages of a deposition.

> [D]epositions are preferable if a searching interrogation of the other party is desired. At a deposition the examining party has great flexibility and can frame the questions on the basis of answers to previous questions. Moreover, the party being examined does not have the opportunity to study the questions in advance and to consult with counsel before answering, as is the case if interrogatories are used. Attempts at evasion, which might be stymied by a persistent oral examination, cannot easily be countered by interrogatories. The flexibility and the potency of oral depositions is in large part lacking in written interrogatories.

8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2163, at 219 (2d ed.1994) (footnote omitted). Thus, where the subject matter of the discovery is fact-sensitive,

> a deposition is incomparably preferable to written interrogatories as a vehicle for seeking out useful evidence, not only because of the greater ease in shaping later questions based on earlier answers but also because the interrogatory answers are typically prepared by lawyers rather than

through the uncounseled responses of the witnesses.

*Hendricks v. Coughlin*, 114 F.3d 390, 394 (2d Cir.1997). These considerations are fully applicable to the instant case.

In sum, Hague Convention procedures are neither the exclusive means nor the method of first resort for taking discovery abroad. In this case no comity concerns compel use of the Hague Convention mechanisms. Furthermore, the interest of the Madanes Brothers in preventing disclosure of highly confidential information outweighs the plaintiff's unsubstantiated concern that alternative forms of discovery will not elicit trustworthy testimony. Finally, the traditional deposition format is more flexible and efficient than the submission of questions to be asked by a judicial officer pursuant to Letters of Request. Mr. Bertucci and Mr. Klainer have expressly agreed to testify at a deposition in Argentina. (Declaration of David A. Weintraub dated Nov. 8, 2000 ("Nov. 8, 2000 Weintraub Decl."), Exhs. A & B). Mr. Rubinstein's position is more ambivalent. He suffered a stroke in 1990 and is reportedly unable to travel abroad to be deposed. (Nov. 8, 2000 Weintraub Decl., Exh. C). However, there is no indication that he is physically unable to sit for a deposition in Argentina. Accordingly, the Madanes Brothers' motion for a protective order barring the issuance of the Letters of Request is granted, provided that all three witnesses appear for deposition in Argentina within thirty days of the date of this Order.[1] Should any of them fail to do so, the plaintiff may again seek Letters of Request.

*Madanes Brothers Motion to Compel*

From 1987 until 1992, Dr. Pomiró, an Argentine attorney, performed legal services for all members of the Madanes family, assisting them in structuring the family assets and investments. (Declaration of David A. Weintraub dated Dec. 1, 2000 ("Dec. 1, 2000 Weintraub Decl."), Exh. G. ¶¶ 14, 21). Beginning in 1992, he did legal work for Pablo and Miguel Madanes, including advising Pa-

---

1. The Madanes Brothers' argument that Mr. Rubinstein has no new information material to the case is without merit. His role is central to some of the allegations made by the plaintiff, and he has submitted no affidavit indicating that he lacks knowledge of the relevant facts.

blo with respect to the entity known as Procida, Ltd. (Deposition of Jorge Pomiró dated Oct. 26, 27, 2000 ("Pomiró Dep."), at 13–14, 74, excerpts attached as Exh. K to Dec. 1, 2000 Weintraub Decl., as Exh. B to Affidavit of James M. Bergin dated Dec. 15, 2000 ("Bergin Aff."), and as Exh. A to Declaration of Ronald G. Blum dated Dec. 15, 2000 ("Blum Decl.")). Dr. Pomiró's representation of the Madanes Brothers ended prior to 1995, when he sued them for unpaid legal bills. (Pomiró Dep. at 8; Blum Decl., Exh. C). In the fall of 1995, Dr. Ricardo Entelman, an attorney representing Mónica, approached Dr. Pomiró and asked that he also provide her with legal assistance. (Pomiró Dep. at 52). Dr. Pomiró agreed, and thereafter he represented Mónica with respect to the family assets and her dispute with her brothers. (Deposition of Mónica Madanes dated Sept. 12, 13, 14, 2000 ("Mónica Dep."), at 480–81, excerpts attached as Exh. J to Dec. 1, 2000 Weintraub Decl., as Exh. C to Bergin Aff., and as Exh. D to Blum Decl.).

By 1993, Mónica was also represented by the New York firm of Morrison & Foerster in connection with her claim that she had not received her fair share of the family assets. (Mónica Dep. at 498, 501–02). Accordingly, in December 1995, Charles L. Kerr of that firm met in Argentina with Mónica and Dr. Pomiró to discuss Dr. Pomiró's work on behalf of the Madanes family. (Affidavit of Charles L. Kerr dated Dec. 4, 1998 ("Kerr Aff."), ¶ 23, attached as Exh. M to Dec. 1, 2000 Weintraub Decl.). During that trip Mr. Kerr reviewed files at Dr. Pomiró's office. According to Mr. Kerr, although Dr. Pomiró assured him that the files did not contain any privileged or confidential matter that he should not review, he discovered a folder of Procida documents that he copied and took back to New York. (Kerr Aff. ¶¶ 23–24). Dr. Pomiró, however, denies providing any Procida documents to Mr. Kerr voluntarily and states that he has no idea how the plaintiff obtained them. (Pomiró Dep. at 84–85, 96, 193).

When Mónica filed the complaint in this action in 1996, she alleged that Pablo utilized Procida as a vehicle for diverting Madanes family assets to his own benefit. (Compl. ¶¶ 132–40). The Madanes Brothers, in turn, filed a third-party complaint against Dr. Pomiró, alleging in part that he violated his fiduciary duty to them by conspiring with Mónica and providing her with confidential information he had misappropriated from them. (Third–Party Compl. ¶¶ 5, 41–46).

The Madanes Brothers now seek three forms of discovery relating to Dr. Pomiró. First, they demand disclosure of documents as to which Dr. Pomiró and Mónica have asserted either the attorney-client privilege or the work product doctrine. Second, the Madanes Brothers ask that Dr. Pomiró be required to answer deposition questions regarding his collaboration with Mónica's other attorneys. And, third, they request an order compelling Mr. Kerr to submit to a deposition.

### A. *Attorney–Client Privilege*

Because this is a federal question case, privilege issues are governed by the federal common law. Fed.R.Evid. 501. The attorney-client privilege applies to the extent that:

> (1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or the legal adviser, (8) except the protection be waived....

*In re Richard Roe, Inc.*, 68 F.3d 38, 39–40 (2d Cir.1995) (quoting *United States v. Kovel*, 296 F.2d 918, 921 (2d Cir.1961)). The privilege also extends to communications by the attorney to the client, at least to the extent that they incorporate confidential information previously conveyed by the client. *See In re Six Grand Jury Witnesses*, 979 F.2d 939, 943–44 (2d Cir.1992); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 441–42 (S.D.N.Y.1995). The burden is on the party asserting the privilege to establish each of the requisite elements. *See von Bulow v. von Bulow*, 811 F.2d 136, 144 (2d Cir.1987); *Saxholm AS v. Dynal, Inc.*, 164 F.R.D. 331, 333 (E.D.N.Y.1996); *United States v. Rivera*, 837 F.Supp. 565, 567 (S.D.N.Y.1993).

1. *Attorney–Client Relationship*

The Madanes Brothers challenge Dr. Pomiró's assertion of the privilege on several grounds, the first being that he did not provide legal advice to Mónica. This argument is frivolous. It is based on a paragraph in Dr. Pomiró's answer to the third-party complaint in which he denied *conspiring* with Mónica and her attorneys by providing legal services to her. (Dec. 1, 2000 Weintraub Decl., Exh. G, ¶ 27 & Exh. H, ¶ 27). He certainly did not deny representing her, and his deposition testimony and that of Mónica make clear that he did perform legal services for her. (Pomiró Dep. at 51–52; Mónica Dep. at 480–81).

More substantive is the Madanes Brothers' contention that there was no legitimate attorney-client relationship between Dr. Pomiró and Mónica "[b]ecause Plaintiff consulted with Dr. Pomiró in order to have him act adversely to the Madanes Brothers, his former clients." (Memorandum of Law in Support of the Madanes Brothers' Motion to Compel Regarding Privilege Issues and the Deposition of Charles Kerr ("Def. Memo.") at 15). They rely on *Cherry v. Hungarian Foreign Trade Bank, Ltd.*, 136 F.R.D. 369 (S.D.N.Y.1991), where the court held that no privilege protected communications between one lawyer ("Lawyer A") and a second lawyer ("Lawyer B") that the first hired purportedly to help represent a client but whom he then induced to assist him in suing that client over a fee. As the court noted, "[Lawyer B] was already [the client's] lawyer when [Lawyer A] approached him with the express purpose of inducing him to act adversely to [the client]." *Id.* at 372.

 On the other hand, where an attorney simply represents simultaneously two clients whose interests have become adverse, each client's communications with the attorney remain privileged as against the other. *See Eureka Investment Corp., N.V. v. Chicago Title Insurance Co.*, 743 F.2d 932, 936–38 (D.C.Cir.1984). This is because "counsel's failure to avoid a conflict of interest should not deprive the client of the privilege. The privilege, being the client's, should not be defeated solely because the attorney's conduct was ethically questionable." *Id.* at 938.

The court in *Eureka* relied on a hypothetical posed by Dean Wigmore in which he concluded:

A communication by A to X as A's attorney, X being then also the attorney of B, now become the party opponent, is ordinarily privileged because of the relation of X toward A. Nor does the fact of A's knowledge that X is already B's attorney, nor the fact of B's being already adversely interested destroy the privilege. This is so because, although X ought not to undertake to act for both in any matter where there is a possibility of adverse interests, nonetheless A is protected by reason of the relation.

8 J. Wigmore, *Evidence* § 2312, at 608 (McNaughton rev. ed.1961) (quoted in *Eureka*, 743 F.2d at 937).

In this case, Dr. Pomiró clearly placed himself in an ethically dubious position when he agreed to represent Mónica after previously representing the Madanes Brothers with respect to assets to which Mónica now asserts a right. For example, Disciplinary Rule 5–108 of the Code of Professional Responsibility states in pertinent part that:

a lawyer who has represented a client in a matter shall not, without the consent of the former client after full disclosure ... [t]hereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client.

DR 5–108(A)(1), 22 N.Y.C.R.R. § 1200.27.

Nevertheless, the plaintiff argues that Dr. Pomiró's conduct was entirely appropriate under Argentine rules of professional conduct. Attorneys in Buenos Aires are prohibited from "[r]epresenting, sponsoring and/or counseling opposing interests simultaneously or successively in the same case." Act 23.187, Section 10(a) of the Norms of the Profession in Buenos Aires (Normas para el ejercicio de la profesión en la Capital Federal) (attached as Exh. C to Declaration of Héctor A. Mairal dated Dec. 1, 2000 ("Mairal Decl.")); *see also* Section 19(g) of the Code of Ethics Governing Argentine Lawyers in Buenos Aires (Colegio Público de Abogados de la

Capital Federal—Código de Ética) (attached as Exh. B to Mairal Decl.). Thus, according to the plaintiff's expert, Dr. Guillermo Cabanellas,

> Two basic elements are ... necessary for a prohibited conflict of interest situation to exist under the Code of Ethics. First, the attorney must be acting for "opposite interests." Second, this conduct must take place "in the same case."

(Declaration of Guillermo Cabanellas dated Dec. 15, 2000 ("Cabanellas Decl."), ¶ 13) (citations omitted). The plaintiff therefore argues that since Dr. Pomiró is not representing her in the "same case" in which he previously represented the Madanes Brothers, he has committed no ethical breach. And, in the absence of such a breach, communications between the plaintiff and Dr. Pomiró should remain inviolate.

This reasoning is flawed in two respects. First, it does not appear that the "same case" requirement is nearly so strict as Dr. Cabanellas implies. One of the treatises that Dr. Cabanellas cites includes the observation that "the duty of loyalty is nevertheless strictly limited in content to those specific interests with respect to which the lawyer performed his professional activities—and not to all of his clients interests—within the framework of a particular case or cases *and those objectively related.*" Elvira L. Gargaglione, *Código de Ética de los Abogados: Comentado* 135 (1996) ("Que el deber de fidelidad se encuentra no obstante estrictamente limitado en cuanto a su contenido, a los intereses concretos respecto de los cuales desempeñó su actividad profesional el letrado—y no a todos los intereses de sus clientes—en el marco de una causa o causas determinadas, *y las objetivamente conexas.*") (emphasis added) (Cabanellas Decl., Exh. J). Similarly, in a second treatise relied on by Dr. Cabanellas, the sentence immediately following the paragraph he cites states that "[t]he term 'same case' does not only mean the same proceeding or action but rather also includes other cases that are tied in some fundamental way to that in which he has represented or advised a client." Ofelia Rosenkranz et al., *Ética Profesional de los Abogados* 163 ("La expresión 'misma causa' no significa solo en el mismo expediente, sino que comprende también a otras causas que se encuentren esencialmente ligadas a aquella en la cual se ha representado, patrocinado o asesorado a un cliente.") (Cabanellas Decl., Exh. H). Certainly it is alleged that Dr. Pomiró's representation of Mónica Madanes in relation to this litigation is "objectively connected" or "tied in some fundamental way" to his prior representation of the Madanes Brothers.

█ Second, even if it were clear beyond doubt that Dr. Pomiró's conduct did not violate Argentine professional ethics, this alone would not suffice to support the assertion of privilege in this action. As noted above, the federal common law of privilege governs in this case. Whether foreign law should play a role in defining the contours of the attorney-client privilege in any given case is a determination within the sound discretion of the court. *See VLT Corp. v. Unitrode Corp.,* 194 F.R.D. 8, 14–15 & n. 3 (D.Mass.2000) (under Fed.R.Evid. courts may look to foreign jurisdictions in fashioning federal privilege law); *Golden Trade S.r.L. v. Lee Apparel Co.,* 143 F.R.D. 514, 521 (S.D.N.Y.1992). Here it would be anomalous for the plaintiff and Dr. Pomiró to engage in conduct that may violate American professional ethics, even if not Argentine ethical norms, and then seek to shield their communications on the basis of a privilege asserted in an American court. Therefore, to the extent that Argentine disciplinary rules might allow representation of adverse parties in successive cases, those rules will not control the privilege analysis here.

█ Thus, the appropriate focus is on whether any privilege has been forfeited because of Dr. Pomiró's conduct. On one hand, as noted above, Dean Wigmore makes it clear that the existence of an attorney's conflict of interest does not, by itself, abrogate an assertion of privilege by the client. On the other hand, when a second client induces a lawyer to breach his fiduciary duty to a prior client, the second client's communications with the lawyer are not privileged. It must therefore be determined whether Dr. Pomiró violated his duty of loyalty to the Madanes Brothers by revealing to Mónica information that they had conveyed to him in

confidence and whether the plaintiff played any role in such a breach.

The plaintiff argues that no ethical violation occurred because any information that Dr. Pomiró transmitted to her was information she was entitled to by virtue of Dr. Pomiró's joint representation of all family members or was otherwise nonprivileged. This is half right. As long as Dr. Pomiró provided representation of Mónica and her brothers with respect to their common interests, the communications between any of them and Dr. Pomiró about those common interests are not confidential as against the other siblings. *See North River Insurance Co. v. Columbia Casualty Co.,* No. 90 Civ. 2518, 1995 WL 5792, at *2 (S.D.N.Y. Jan. 5, 1995); *In re Grand Jury Subpoena Duces Tecum Dated November 16, 1974,* 406 F.Supp. 381, 386 (S.D.N.Y.1975); Wigmore, *supra,* § 2312, at 605–06. Thus, to the extent that Dr. Pomiró provided Mónica with information concerning Madanes family assets that he obtained in the course of his representation of the family up to 1992, he has breached no duty, and any communications with Mónica concerning this subject matter remain privileged.

■ The plaintiff also argues that any communications concerning Procida likewise remain protected because the Court has already determined that the Procida documents that Dr. Pomiró disclosed to her are nonprivileged. *See Madanes,* 186 F.R.D. at 292–93. But the mere fact that the documents are not cloaked in privilege does not mean that their disclosure was not a breach of confidence. Under Disciplinary Rule 5–108, an attorney may not "[u]se any confidences or secrets of the former client except as permitted by DR 4–101(C) or when the confidence or secret has become generally known." DR 5–108(A)(2), 22 N.Y.C.R.R. § 1200.27. Thus, "an attorney owes a 'continuing duty to a former client—broader in scope than the attorney-client evidentiary privilege—not to reveal confidences learned in the course of the professional relation-

ship.'" *Jamaica Public Service Co. v. AIU Insurance Co.,* 92 N.Y.2d 631, 637, 684 N.Y.S.2d 459, 462, 707 N.E.2d 414 (1998) (quoting *Greene v. Greene,* 47 N.Y.2d 447, 453, 418 N.Y.S.2d 379, 382, 391 N.E.2d 1355 (1979)). Accordingly, even if not privileged, the Procida documents may have been confidential, in which case their deliberate disclosure to Mónica would have been a breach of Dr. Pomiró's professional duty to the Madanes Brothers.[2]

■ Whether that is the case cannot yet be determined for several reasons. First, relying on the Argentine attorney-client privilege, Dr. Pomiró has declined to identify even the subject matter of the advice he gave to Mónica (Pomiró Dep. at 65–66), and so it is not known whether he has discussed Procida with her at all. However, a broad foreign testimonial or evidentiary privilege ought not be recognized in this Court if it impedes the determination of whether a privilege exists under the federal common law. Therefore, Dr. Pomiró's reliance on the Argentine privilege is overruled to the extent that he must identify the subject matter of his communications with Mónica though he need not reveal their content.

Second, although the subject matter of the disputed documents is identified in the privilege logs of Dr. Pomiró and the plaintiff, it is often not apparent whether these documents relate to Procida, to the family assets, or to some other subject that might or might not involve confidential information obtained from the Madanes Brothers. Therefore, Dr. Pomiró and the plaintiff shall produce the disputed documents for my *in camera* review. *See United States v. Zolin,* 491 U.S. 554, 568–70, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) (review of disputed documents *in camera* appropriate in evaluating privilege); *Calvin Klein Trademark Trust v. Wachner,* 198 F.R.D. 53, 54 (S.D.N.Y.2000) (utilizing *in camera* procedure).

Finally, there is a factual dispute concerning the circumstances under which Mónica came into possession of the Procida docu-

---

2. In a pretrial conference, I suggested that if the Procida documents were themselves created in furtherance of a crime or fraud, then their disclosure might not be a breach of confidentiality. Although counsel for the plaintiff have subsequently adopted this argument, they have produced no factual support for such a theory.

ments. Her counsel suggests that Dr. Pomiró inadvertently disclosed them. (Kerr Aff. ¶¶ 23–24). Dr. Pomiró, however, testified that he never gave plaintiff's counsel any Procida papers. (Pomiró Dep. at 83–84). This issue shall be discussed further in connection with the application to depose Mr. Kerr.

### 2. *Confidentiality*

The Madanes Brothers also contend that:

> Plaintiff can have no expectation of confidentiality with respect to any communications regarding Procida, since Procida was an entity for which Dr. Pomiró performed legal work solely for Pablo Madanes. Additionally, Plaintiff could not have had any reasonable expectation of confidentiality to the extent she consulted Dr. Pomiró about the Madanes Family assets, since he previously had advised the Madanes Family with respect to those assets.

(Def. Memo. at 18).

There is no merit to the suggestion that Mónica has no claim of confidentiality in her communications about the family assets merely because Dr. Pomiró once represented all of the family members. When the joint representation ended, so did the joint privilege. The question of whether the plaintiff also had a legitimate expectation of confidentiality concerning communications about Procida is subsumed within the issue of whether Dr. Pomiró breached his duty to the Madanes Brothers in connection with Procida. As discussed above, that determination must be deferred pending further factual development.

### 3. *Waiver*

The Madanes Brothers also argue that Mr. Kerr waived any privilege by recounting his conversation with Dr. Pomiró about the production of information that apparently included the Procida documents. (Def. Memo. at 13). The Madanes Brothers contend that by using the privilege both as a sword and as a shield, the plaintiff has waived any protection concerning the communications. They further maintain that by selectively revealing part of the communication with Dr. Pomiró, the privilege has been waived as to the entire subject matter.

Neither argument has merit. Mr. Kerr revealed no more than he reasonably considered necessary to substantiate the claim of privilege. (Kerr Aff. ¶¶ 23–24). In doing so, he gained no advantage for the plaintiff concerning the merits of the litigation, and his disclosure was no more "selective" than that made in any privilege log.

### 4. *Crime–Fraud Exception*

Finally, the Madanes Brothers argue that any privilege that might otherwise protect Dr. Pomiró's communications with the plaintiff or her other attorneys is forfeited on the basis of the crime-fraud exception. They contend that Mónica conspired with Dr. Pomiró to violate Sections 156 and 271 of the Argentine Criminal Code. Section 156 generally makes it a crime for a person to divulge a secret that he has learned in the course of his professional duties. (Mairal Decl., Exh. E). Under Section 271, it is a criminal offense for an attorney to represent adverse parties simultaneously or successively in the same legal action. (Mairal Decl., Exh. D). And, potential criminal liability aside, the Madanes Brothers argue that Dr. Pomiró's representation of Mónica against his former clients would at least constitute a fraud.

The crime-fraud exception strips the attorney-client privilege from any communications that "relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct." *In re John Doe, Inc.*, 13 F.3d 633, 636 (2d Cir. 1994) (quoting *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d 1032, 1038 (2d Cir.1984)). The purpose of the exception is "to assure that the 'seal of secrecy' between lawyer and client does not extend to communications 'made for the purpose of getting advice for the commission of a fraud' or crime." *United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir.1997) (quoting *Zolin*, 491 U.S. at 563, 109 S.Ct. 2619) (internal citations omitted).

The burden is on the party invoking the crime-fraud exception to "demonstrate that there is a factual basis for a

showing of probable cause to believe that a fraud or crime has been committed and that the communications in question were in furtherance of the fraud or crime." *Id.* In evaluating the basis presented, a court follows a two-step process. First, it considers whether a "prudent person" would find that the evidence proffered would constitute "a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof." *Id.* (quoting *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d at 1039). Then, the court may decide to review the evidence *in camera. Zolin*, 491 U.S. at 572, 109 S.Ct. 2619; *Jacobs*, 117 F.3d at 87.

 The threshold question in this case is whether the criminal law of Argentina should be incorporated in a crime-fraud analysis under the federal common law of privilege. If the crime-fraud exception were based on the client's expectation of confidentiality, then foreign law would be critical because whatever undermines that expectation would likewise undercut the attorney-client privilege. However, the basis for the crime-fraud exception is not any diminished expectation of confidentiality, but rather the overarching public policy principle that a court will not enforce privilege where to do so would facilitate a crime. *See Zolin*, 491 U.S. at 562–63, 109 S.Ct. 2619. Viewed in this light, the exception is forum-specific since what constitutes a crime will vary from one jurisdiction to the next.[3] Accordingly, foreign criminal law should be recognized for purposes of federal common law crime-fraud analysis only when it has an analogue in American jurisprudence. In this case, there is no American equivalent to the Argentine statutes that impose criminal liability for an attorney divulging client confidences or accepting an engagement that creates a conflict of interest. Hence, the "crime" prong of the crime-fraud exception does not apply.

Likewise, the conduct alleged by the Madanes Brothers is not literally a "fraud." At common law, fraud consists of an intentional and material misrepresentation that is reasonably relied upon by the plaintiff and causes the plaintiff damage. *See Chanayil v. Gulati*, 169 F.3d 168, 171 (2d Cir.1999); *MacDraw, Inc. v. CIT Group Equipment Financing, Inc.*, 157 F.3d 956, 960–61 (2d Cir. 1998); *Hyosung America, Inc. v. Sumagh Textile Co.*, 137 F.3d 75, 78 (2d Cir.1998). In addition, a party may be liable for fraudulent concealment if he withholds material information that he has a duty to disclose. *See Banque Arabe et Internationale D'Investissement v. Maryland National Bank*, 57 F.3d 146, 153 (2d Cir.1995). In some circumstances, a breach of fiduciary duty by an attorney may constitute a fraud. In Dean Wigmore's example, "A consults X as his attorney, with the express purpose of inducing him, while B's attorney, to act adversely to B." Wigmore, *supra*, § 2313, at 609. This constitutes a fraud because the attorney is concealing from B the material fact that he is simultaneously representing A. By contrast, in the instant case Dr. Pomiró was no longer representing the Madanes Brothers when he undertook to represent Mónica and therefore owed them no further duty of disclosure.

The crime-fraud exception is therefore inapplicable here if it is limited to crimes as defined by the applicable penal laws and fraud as defined by common law. Some courts take this restrictive approach. *See Ferrara & DiMercurio, Inc. v. St. Paul Mercury Insurance Co.*, 173 F.R.D. 7, 13 (D.Mass.1997); *Milroy v. Hanson*, 902 F.Supp. 1029, 1032–34 (D.Neb.1995). Dean Wigmore, however, considered the distinction between fraud and other intentional torts an overly "crude boundary." Wigmore, *supra*, § 2298, at 577. Following this more expansive approach, courts have defined the exception to encompass communications in furtherance of a "tort," *Horizon of Hope Ministry v.*

---

**3.** For example, suppose that it is a criminal offense in another culture to work on Tuesdays. In connection with litigation in this Court, a client in that country advises his attorney, also in that country, that he intends to work on Tuesdays. That communication would not be subject to the crime-fraud exception and would not result in abrogation of the attorney-client privilege because it does not violate the public policy of the United States for someone to work on Tuesdays or for the courts to protect from disclosure communications relating to such conduct.

*Clark County, Ohio,* 115 F.R.D. 1, 5 (S.D.Ohio 1986); a "crime or tort," *United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357, 358 (D.Mass.1950); *People v. Belge,* 59 A.D.2d 307, 309, 399 N.Y.S.2d 539, 540 (4th Dep't 1977), a "crime, fraud, or other type of misconduct fundamentally inconsistent with the basic premises of the adversary system," *Coleman v. American Broadcasting Cos.,* 106 F.R.D. 201, 208 (D.D.C.1985) (quoting *In re Sealed Case,* 676 F.2d 793, 812 (D.C.Cir.1982)), or "intentional torts moored in fraud." *Sackman v. Liggett Group, Inc.,* 173 F.R.D. 358, 364 (E.D.N.Y. 1997) (quoting *Cooksey v. Hilton International Co.,* 863 F.Supp. 150, 151 (S.D.N.Y. 1994)). District courts in this circuit have long construed the exception as reaching some conduct beyond crime and fraud. *See Sackman,* 173 F.R.D. at 364; *Cooksey,* 863 F.Supp. at 151; *Rattner v. Netburn,* No. 88 Civ. 2080, 1989 WL 223059, at *47 (S.D.N.Y. June 20, 1989) (intentional torts); *In re Heuwetter,* 584 F.Supp. 119, 127 (S.D.N.Y.1984) (torts); *Irving Trust Co. v. Gomez,* 100 F.R.D. 273, 276 (S.D.N.Y.1983) ("intentional or reckless tortious behavior"); *Diamond v. Stratton,* 95 F.R.D. 503, 505 (S.D.N.Y.1982) (intentional tort).[4]

 At a minimum, then, the attorney-client privilege does not protect communications in furtherance of an intentional tort that undermines the adversary system itself. That is what is alleged here. Dr. Pomiró and Mónica are charged with conspiring to vio-

late Dr. Pomiró's duty to maintain confidences communicated to him by his former clients, the Madanes Brothers. If true, this would be sufficient to trigger the crime-fraud exception and remove the attorney-client privilege from communications between Dr. Pomiró and Mónica in furtherance of that purpose.

The Madanes Brothers have not yet demonstrated probable cause to believe that these allegations are true. They have, however, proffered facts warranting further inquiry, including an *in camera* review of the documents at issue. *See Zolin,* 491 U.S. at 572, 109 S.Ct. 2619; *Jacobs,* 117 F.3d at 87. It is undisputed that in some fashion Mónica came into possession of information about Procida that Dr. Pomiró obtained in the course of his representation of the Madanes Brothers. Therefore, the procedure outlined above for exploring whether Mónica's communications with Dr. Pomiró are covered by the attorney-client privilege at all shall also be utilized to determine whether the crime-fraud exception serves to remove the privilege.

### B. Work Product Doctrine

 Many documents have been withheld from discovery by the plaintiff and by Dr. Pomiró on the basis of the work product doctrine alone. Pursuant to Rule 26(b)(3) of the Federal Rules of Civil Procedure, documents prepared "in anticipation of litigation" and "mental impressions, conclusions, opin-

---

4. The court in *Weissman v. Fruchtman,* No. 83 Civ. 8958, 1986 WL 15669 (S.D.N.Y. Oct.31, 1986), disagreed, finding that "the Second Circuit has not added torts to the crime or fraud exception." *Id.* at *16. The court relied on *In re Grand Jury Subpoena Duces Tecum,* 731 F.2d 1032 which postdated *Diamond* and *Irving Trust,* and where the Second Circuit held that otherwise privileged communications "are not protected if they relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct." *Id.* at 1038 (quoted in *Weissman,* 1986 WL 15669, at *16).

I am not persuaded. First, *In re Grand Jury Subpoena Duces Tecum* involved documents allegedly generated in furtherance of an attempt to defraud the United States or to obstruct justice. The fact that the Second Circuit employed the "crime-fraud" shorthand to refer to the exception in the context of alleged crime and fraud says nothing about whether, if presented with the

appropriate facts, it would also apply the exception to certain intentional torts. Second, district court cases after *In re Grand Jury Subpoena Duces Tecum* have followed the rationale of *Diamond* and *Irving Trust.* *See Sackman,* 173 F.R.D. at 364; *Cooksey,* 863 F.Supp. at 151; *Rattner,* 1989 WL 223059, at *47.

The *Weissman* court also noted that the Advisory Committee on the Federal Rules of Evidence rejected the language contained in Uniform Rule of Evidence 26(2)(a), which establishes an exception for communications in furtherance of "a crime or a tort," in favor of the "crime or fraud" formulation. *Weissman,* 1986 WL 15669, at *16 & n. 20. However, the rule drafted by the Advisory Committee, proposed Rule 503, was ultimately rejected by Congress. Moreover, while it is entirely rational not to expand the exception to communications relating to any tort whatsoever, it does not follow that no torts other than pure fraud should be included.

ions, or legal theories of an attorney or other representative of a party concerning the litigation" are protected from discovery. The party seeking to withhold material from discovery bears the burden of demonstrating that it is covered by the work product doctrine. *See Loftis v. Amica Mutual Insurance Co.*, 175 F.R.D. 5, 11 (D.Conn.1997); *In re Minebea Co., Ltd.*, 143 F.R.D. 494, 499 (S.D.N.Y.1992).

█ Work product material that does not involve an attorney's thought process may be ordered produced if the discovering party demonstrates a "substantial need of the materials in preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed.R.Civ.P. 26(b)(3). By contrast, "opinion work product enjoys a near absolute immunity and can be discovered only in very rare and extraordinary cases ... where weighty consideration of public policy and proper administration of justice would militate against nondiscovery." *Minebea*, 143 F.R.D. at 499 (internal quotations and citations omitted). *See also Loftis*, 175 F.R.D. at 11; *Cornelius v. Consolidated Rail Corp.*, 169 F.R.D. 250, 253 (N.D.N.Y. 1996).

The Madanes Brothers argue that the "substantial need" requirement is satisfied here because the documents at issue would support their claim that Dr. Pomiró violated his fiduciary duty by providing Procida documents to Mónica and otherwise being an "active participant" in her litigation against them. Thus, the documents at issue are relevant, but relevancy alone is not enough to establish substantial need. *See* 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *supra*, § 2025, at 374 (substantial need is "seemingly something more than relevancy sufficient to satisfy Rule 26(b)(1)").

█ Nevertheless, substantial need is shown where the work product material at issue is central to the substantive claims in litigation. For example, in a discrimination case where an employer defends on the basis of having made an adequate investigation of the charges, work product showing the extent of the investigation is discoverable. *See Peterson v. Wallace Computer Services, Inc.*,

984 F.Supp. 821, 826–27 (D.Vt.1997). Similarly, if a client suing a former attorney for malpractice claims as damages the fees paid to a successor attorney who pursued the litigation to its conclusion, then the work product of that second attorney may be discovered. *See Rutgard v. Haynes*, 185 F.R.D. 596, 601 (S.D.Cal.1999).

█ The same principles apply here. The Madanes Brothers charge Dr. Pomiró with tortious conduct committed through his representation of Mónica. Thus, the attorney work product generated in the course of that representation is not merely relevant to the Madanes Brothers' claims; it is central to them.

This does not mean, however, that the immunity from discovery is automatically stripped from all of the work product documents. To the extent the documents relate to Dr. Pomiró providing Mónica or her counsel with information he obtained in confidence while representing the Madanes Brothers, then the protection is indeed lost. However, an attorney breaches no fiduciary duty merely by turning against a former client. If Dr. Pomiró only aided Mónica in her litigation against her brothers without disclosing the confidences of former clients— as by advising her concerning the family assets generally—he committed no tort, and related documents do not lose their protection. In light of this distinction it is necessary for me to review the work product documents *in camera* to determine whether the substantial need requirement has been met.

The Madanes Brothers have satisfied the second requirement for obtaining discovery of work product by demonstrating an inability to obtain equivalent evidence without undue hardship. The plaintiff complains that counsel for the Madanes Brothers did not even bother to depose her with regard to assistance she received from Dr. Pomiró. But they did inquire of Dr. Pomiró himself and were generally met with objections and directions not to answer. Moreover, since the plaintiff has engaged multiple counsel, any communications in which Dr. Pomiró may have breached a duty to his prior clients

could have been made to her other attorneys rather than to Mónica herself. Furthermore, Dr. Pomiró has indicated that prior to the filing of this case he was unaware of certain other litigation that the plaintiff was involved in—testimony that may be at odds with documents that are being withheld pursuant to the work product doctrine. *See Baker v. General Motors Corp.,* 197 F.R.D. 376, 383 (W.D.Mo.1999) (lack of memory and inconsistencies in testimony justify requiring disclosure of work product relevant to impeachment); *A.F.L. Falck, S.p.A. v. E.A. Karay Co., Inc.,* 131 F.R.D. 46, 49 (S.D.N.Y.1990) (work product ordered produced due to witness' lack of memory). Accordingly, if, on the basis of my *in camera* review, the documents at issue relate to the Madanes Brothers' central claims—that Dr. Pomiró disclosed confidential information—they may be ordered disclosed to the extent they contain ordinary work product.

▮ The Madanes Brothers also argue that all work product, including opinion work product, should be produced because it was created in connection with Dr. Pomiró's violation of the Argentine Criminal Code through his disclosure of client secrets. The crime-fraud exception applies to the work product doctrine just as it does to the attorney-client privilege. *See In re Richard Roe, Inc.,* 68 F.3d 38, 40 (2d Cir.1995). Although, as discussed above, foreign law will not be incorporated wholesale into a crime-fraud analysis under federal common law, the conduct alleged here at least amounts to an intentional tort that undermines the adversary system. Therefore, the documents containing opinion work product will also be reviewed *in camera* to determine whether they fall within the exception.

### C. *Deposition of Counsel*

▮ Finally, the Madanes Brothers seek to depose Charles L. Kerr, currently lead counsel for the plaintiff in this action. Depositions of opposing counsel are disfavored. *United States v. Yonkers Board of Education,* 946 F.2d 180, 185 (2d Cir.1991); *Maher v. Monahan,* No. 98 Civ. 2319, 2000 WL 777877, at *4 (S.D.N.Y. June 15, 2000); *Bogan v. Northwestern Mutual Life Insurance*

*Co.,* 152 F.R.D. 9, 14 (S.D.N.Y.1993). This presumption is based on the recognition that even a deposition of counsel limited to relevant and non-privileged information risks disrupting the attorney-client relationship and impeding the litigation. *United States Fidelity & Guaranty Co. v. Braspetro Oil Services Co.,* Nos. 97 Civ. 6124, 98 Civ. 3099, 2000 WL 1253262, at *2 (S.D.N.Y. Sept. 1, 2000); *Maher,* 2000 WL 777877 at *4; *Roznitsky v. Schwartz Cobb & Scheinert,* No. 98 Civ. 6643, 1999 WL 187074, at *2 (S.D.N.Y. April 6, 1999).

▮ Nevertheless, depositions of opposing counsel are not categorically barred. Rather, "the request to depose a party's attorney must be weighed by balancing, generally speaking, the necessity for such discovery in the circumstances of the case against its potential to oppress the adverse party and to burden the adversary process itself." *Johnston Development Group, Inc. v. Carpenters Local Union No. 1578,* 130 F.R.D. 348, 352 (D.N.J.1990). The deposition may be permitted if "(1) no other means exist to obtain the sought-after information, (2) the information at issue is both relevant and not privileged, and (3) the information in question is crucial to the discovering party's trial preparation." *Maher,* 2000 WL 777877, at *4; *see also United States Fidelity & Guaranty Co.,* 2000 WL 1253262, at *1.

▮ In one respect, the Madanes Brothers have met this standard. It is undisputed that the plaintiff's current counsel obtained information about Procida that Dr. Pomiró had access to when he was the Madanes Brothers' counsel. While Dr. Pomiró testified that he did not divulge this information to Mr. Kerr, Mr. Kerr submitted an affidavit attesting that he received the Procida documents along with others from Dr. Pomiró's office. Whether Dr. Pomiró intentionally disclosed his former clients' secrets goes to the heart of the Madanes Brothers' claims against him. The circumstances of the transfer, while possibly subject to the work product doctrine, do not appear to involve privileged communications. And the seeming inconsistencies between the account of Dr. Pomiró and Mr. Kerr cannot be resolved without Mr. Kerr's deposition. Accordingly,

Mr. Kerr shall be deposed solely concerning the circumstances under which he received the Procida documents. The Madanes Brothers have not overcome the presumption against attorney depositions with respect to any other issue.

*Plaintiff's Motion to Compel*

 The plaintiff contends that the Madanes Brothers have waived the attorney-client privilege with respect to their communications with Dr. Pomiró by asserting an advice-of-counsel defense and by selectively disclosing privileged communications.

The Madanes Brothers concede that they cannot assert a privilege in connection with those claims as to which they now interpose an advice-of-counsel defense. Although they advanced a broad advice-of-counsel defense in their answer, they subsequently submitted responses to contention interrogatories in which they withdrew that defense in relation to many claims, as to which they now argue that there is no waiver of privilege. The plaintiff responds that once having advanced a general advice of counsel defense, the Madanes Brothers cannot now "unring the bell."

There is no authority for such a rule. Indeed, parties commonly modify their legal claims during the course of litigation. *See, e.g., Lang v. Prescon Corp.,* 545 F.Supp. 933, 949 n. 29 (D.Del.1982) (defendant withdrew advice-of-counsel defense prior to trial). As long as the adversary is not prejudiced, there is no reason to compel a party to maintain claims or defenses that it wishes to abandon. No prejudice is alleged here. Therefore, the Madanes Brothers have waived the attorney-client privilege for communications with Dr. Pomiró only with respect to those issues as to which they continue to maintain that they relied on advice of counsel.

 The plaintiff also argues that the Madanes Brothers violated what is known as the "fairness doctrine" by selectively revealing privileged documents. "[A] party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny of the opposing party." *In re*

*Grand Jury Proceedings,* 219 F.3d 175, 182 (2d Cir.2000) (citation omitted). Where selective disclosure results in the privilege being used as a sword as well as a shield or where it will prejudice the adversary at trial, the remedy is to declare the privilege waived as to all other communications concerning the same subject matter. *See In re Leslie Fay Cos. Securities Litigation,* 161 F.R.D. 274, 282 (S.D.N.Y.1995).

Here, the plaintiff asserts that the Madanes Brothers have waived the privilege with respect to three topics. First, Mónica argues that Pablo selectively disclosed privileged communications with Dr. Pomiró concerning an agreement entered into in July 1992, pursuant to which the brothers agreed to provide her information about the family assets (the "July 1992 Agreement"). Accordingly, she demands that all communications between the Madanes Brothers and Dr. Pomiró concerning her requests for information be revealed. Pablo testified at his deposition as follows:

Q: Let me ask this question then: Prior to July 1992 did you tell Dr. Pomiró not to provide information to Mónica Madanes regarding Madanes family investments?

A: Not that I'm aware of.

\* \* \* \* \* \*

Q: In July, August, September of 1992, did you have discussions with Dr. Pomiró about whether he was providing information to Mónica under the July 8, 1992 agreement . . . ?

\* \* \* \* \* \*

A: I don't remember one, but at one point—I don't know if Pomiró—I think that Pomiró was approached by Entelman, requested information regarding especially the overseas investments, and especially the investments regarding the trusts. I don't know if you are referring to that, or—

Q: Let' start with that. How are you aware of that?

A: Because Dr. Pomiró told me, and we had a meeting with Crespo and Dr. Pomiró and myself, and he requested from Crespo and I, we could prepare for him for this

meeting, summary of how the whole—overseas trust was structured[.]

(Deposition of Pablo Madanes dated Sept. 27–28, 2000 ("Pablo Dep."), at 304, 688–89, excerpts attached as Exh. C to Declaration of David A. Weintraub dated Dec. 15, 2000, and as Exh. M to Kerr Decl.). But the cited testimony does not constitute selective disclosure because no privileged communications were revealed. The fact that Dr. Pomiró told Pablo of a meeting in which Mónica's requests for information were discussed discloses only the subject matter of a communication, not its content, and therefore is not privileged. *See* Fed.R.Civ.P. 26(b)(5) (requiring claim of privilege to be supported by description of communications); S.D.N.Y. Local Civil Rule 26.2(a)(2) (requiring claim of privilege to include general subject matter of communication). Pablo's denial that he told Dr. Pomiró not to provide information to Mónica is more substantive. However, it immediately followed the following colloquy:

Q: Okay. Did you ever tell Dr. Pomiró that he should not provide information to Mónica Madanes concerning family matters?

Mr. Schissel [Pablo's attorney]: Wait a minute. This might be, depending on the time frame, this could be privileged. So why don't you just give him a time frame.

Q: Prior to 1993.

Mr. Schissel: Well, that is privileged. I think he was representing Mr. Madanes at that time.

(Pablo Dep. at 303). Thus, when counsel changed the time frame of the question to "prior to July 1992," Pablo evidently understood this to mean the period when all the siblings were represented by Dr. Pomiró. Since his communications with Dr. Pomiró at that time would not be privileged as against Mónica, their disclosure is not a waiver.

■ Next, the plaintiff asks for a finding of waiver with respect to the subject matter of two letters sent in July 1993 and August 1993 to Dr. Pomiró by Mónica's attorney seeking information about the family assets. It is undisputed that Pablo Madanes testified about his discussions with Dr. Pomiró concerning the July 1993 letter. They discussed the fact that a copy of the letter had been sent to Javier Madanes, a cousin with whom the siblings were then negotiating a transaction, and Dr. Pomiró surmised that Mónica was passing confidential information to Javier to strengthen his bargaining position. This is a classic example of selective disclosure. Pablo revealed this discussion with Dr. Pomiró in order to cast aspersion on the motivation for Mónica's requests for information. At the same time, he has asserted the privilege with respect to any other communications about that issue. Accordingly, Pablo has waived the attorney-client privilege with respect to any communications with Dr. Pomiró concerning responses to Mónica's requests for information. *See In re Grand Jury Proceedings*, 219 F.3d at 183 n. 4.

Finally, the plaintiff seeks a ruling that Pablo waived the privilege by testifying about his discussions with Dr. Pomiró concerning Pablo's sale of his shares in the family business in 1993. The Madanes Brothers concede that the privilege has been waived with respect to this subject.

*Conclusion*

For the reasons set forth above, the pending discovery motions are resolved as follows. The Madanes Brothers' application for a protective order barring the issuance of Letters of Request to obtain the testimony of Bernardo Rubinstein, Armando Bertucci, and Daniel Klainer is granted on the condition that each of these witnesses appears for deposition in Argentina within thirty days. The Madanes Brothers' motion for an order overruling the assertion of attorney-client privilege and work product protection with respect to communications between the plaintiff and Dr. Pomiró is denied pending my *in camera* review of the documents identified in the privilege logs of the plaintiff and Dr. Pomiró. The Madanes Brothers' application to take the deposition of Charles L. Kerr is granted to the extent that he shall testify concerning the circumstances of his receipt of the Procida documents and is otherwise denied. The plaintiff's motion to compel regarding privilege issues is granted to the extent that the Madanes Brothers have waived the attorney-client privilege as to any communications regarding claims against

which they now assert an advice-of-counsel defense. In addition, Pablo Madanes has waived the privilege concerning his communications with Dr. Pomiró about responding to the plaintiff's requests for information and about his 1993 sale of shares in the family business. Discovery is extended for thirty days solely to address these issues.

SO ORDERED.